**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
　　　　lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK MACHNIEWICZ, Individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>UXIN LIMITED, KUN DAI, ZHEN ZENG, RONG LU, JULIAN CHENG, DOU SHEN, HAINAN TAN, MORGAN STANLEY & CO. INTERNATIONAL PLC, GOLDMAN SACHS (ASIA) L.L.C., J.P. MORGAN SECURITIES LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, and CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED,<br><br>　　　Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

　　　Plaintiff Patrick Machniewicz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and

1

announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Uxin Limited ("Uxin" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired publicly traded securities of Uxin pursuant and/or traceable to the Company's initial public offering held on or around June 27, 2018 (the "Offering" or "IPO"), seeking to recover compensable damages caused by Defendants' violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under §§ 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 22 of the Securities Act, 15 U.S.C. §77v.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and § 22 of the Securities Act as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased the Company's securities at artificially inflated prices pursuant and/or traceable to the Company's IPO and was economically damaged thereby.

7. Defendant Uxin is a used car e-commerce platform in China. The Company has two segments: Uxin Auction (or 2B business) sells used cars to dealers, and Uxin Used Car (or 2C business) sells used cars to consumers. Uxin Limited is incorporated under the laws of the Cayman Islands with its principal executive offices located in Beijing, China. Uxin's agent for service is located in New York, N.Y. Uxin's securities trade on the NASDAQ under the ticker symbol, "UXIN."

8. Defendant Kun Dai ("Dai") was, at all relevant times, the Chief Executive Officer ("CEO") and Chairman of the Board of Directors, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

9. Defendant Zhen Zeng ("Zeng") was, at all relevant times, the Chief Financial Officer ("CFO") and a Director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

10. Defendant Rong Lu ("Lu") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

11. Defendant Julian Cheng ("Cheng") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

12. Defendant Dou Shen ("Shen") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

13. Defendant Hainan Tan ("Tan") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

14. Defendants Dai, Zeng, Lu, Cheng, Shen, and Tan are collectively referred to hereinafter as the "Individual Defendants."

15. Each of the Individual Defendants:

(a) Participated in the preparation of and signed (or authorized the signing of) the Registration Statement and/or an amendment thereto, and the issuance of the Offering Materials;

(b) directly participated in the management of the Company;

(c) was directly involved in the day-to-day operations of the Company at the highest levels;

(d) was privy to confidential proprietary information concerning the Company and its business and operations;

(e) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(g) approved or ratified these statements in violation of the federal securities laws.

16. Defendant Morgan Stanley & Co. International plc ("Morgan Stanley") served as an underwriter for the Company's IPO. In the Offering, Morgan Stanley agreed to purchase 8,125,000 of the Company's ADSs, exclusive of the over-allotment option.

17. Defendant Goldman Sachs (Asia) L.L.C. ("Goldman Sachs") served as an underwriter for the Company's IPO. In the Offering, Goldman Sachs agreed to purchase 8,125,000 of the Company's ADSs, exclusive of the over-allotment option.

18. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO. In the Offering, J.P. Morgan agreed to purchase 5,000,000 of the Company's ADSs, exclusive of the over-allotment option.

19. Defendant China International Capital Corporation Hong Kong Securities Limited ("China International") served as an underwriter for the Company's IPO. In the Offering, China International agreed to purchase 1,875,000 of the Company's ADSs, exclusive of the overallotment option.

20. Defendant China Renaissance Securities (Hong Kong) Limited ("China Renaissance") served as an underwriter for the Company's IPO. In the Offering, China Renaissance agreed to purchase 1,875,000 shares of the Company's ADSs, exclusive of the over-allotment option.

21. Defendants Morgan Stanley, Goldman Sachs, J.P. Morgan, China International, and China Renaissance are collectively referred to hereinafter as the "Underwriter Defendants."

22. Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared tens of millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Uxin, met with potential investors and

presented highly favorable information about the Company, its operations and its financial prospects.

(b) The Underwriter Defendants also demanded and obtained an agreement from Uxin and the Individual Defendants that Uxin would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Uxin had purchased millions of dollars in directors' and officers' liability insurance.

(c) Representatives of the Underwriter Defendants also assisted Uxin and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Uxin, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning Uxin's most up-to-date operational and financial results and prospects.

(d) In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Uxin's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Uxin securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about Uxin would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those

constant contacts and communications between the Underwriter Defendants' representatives and Uxin's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Uxin's existing problems as detailed herein.

(e) The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

23. Uxin is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

24. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Uxin under *respondeat superior* and agency principles.

25. Defendants Uxin, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

26. On May 29, 2018, Uxin filed a Form F-1 with the SEC, which forms part of the Registration Statement. After a series of amendments, the Registration Statement became effective on June 26, 2018. On June 28, 2018, Uxin filed with the SEC its IPO prospectus, which forms part of the Registration Statement.

27. In the IPO, Uxin sold 25,000,000 ADSs at a price of $9.00 per share. Each ADS represents three shares of Class A common stock. Uxin received proceeds of approximately $205.1 million from the IPO, net of underwriting discounts and commissions. The proceeds

from the IPO were purportedly to be used to improve Uxin's transaction service capabilities, research and development, and general corporate purposes.

28. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

29. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

30. With respect to Uxin's transaction volume, the Registration Statement stated, in relevant part:

> Our ability to continue to increase our transaction volume and GMV affects the growth of our business and our revenues. The total number of used cars sold through our platform increased from 377,777 in 2016 to 634,317 in 2017, representing a 67.9% increase, and from 102,098 in the first three months of 2017 to 165,003 in the first three months of 2018, representing a 61.6% increase. The total GMV of our platform grew from RMB26.0 billion in 2016 to RMB43.4 billion (US$6.9 billion) in 2017, representing a 67.0% increase, and from RMB7.9 billion in the first three months of 2017 to RMB11.6 billion (US$1.9 billion) in the first three months of 2018, representing a 46.8% increase. We anticipate that our future revenue growth will continue to depend largely on the increase of transaction volume on our platform. Our ability to increase transaction volume depends on, among other things, our ability to continually improve the service and user experience that we offer, increase brand awareness, expand our service network and enhance our transaction enablement and technology capabilities.

31. The Registration Statement stated that services such as inspections were important to enabling transactions, stating in relevant part:

> Our offline infrastructure allows us to provide services that are important to enabling transactions, such as the inspection, title transfer and delivery of vehicles, in-person consultation and other after-sale services. In particular, our inspection capabilities allow us to collect proprietary data, images and videos of

8

vehicles and generate accurate car condition reports that allow for standardized comparisons, which are crucial to our users' online purchase decision-making processes.

32. The Registration Statement further stated that inspection and warranty services "are the key to earn customer trust" and that "[i]f we fail to maintain a high level of customer satisfaction or fail to properly manage our warranty and car inspection programs or other services, our business, financial condition and results of the operation would be adversely affected."

33. Moreover, the Registration Statement highlighted the benefits of its proprietary technology:

> Our patented industry-leading car inspection system, Check Auto . . ., provides a comprehensive overview of a used car's condition, while our AI- and big data-driven Manhattan pricing engine evaluates a car's condition and provides buyers and sellers with pricing insights. Our Manhattan pricing engine also enables us to bottom forecast the residual value of vehicles. By leveraging both the Manhattan pricing engine and our proprietary Sunny risk control system, which makes credit assessments on prospective borrowers, we are able to effectively monitor car collateral and manage our risk exposure. Currently, our AI-enabled credit assessment system could automatically process approximately 80% of auto loan applications. In addition, based on the plethora of data we have on our users' browsing history, behavior and preferences, our Lingxi . . . smart selection system provides highly personalized recommendations to consumers, making it more likely for them to find the car of their choice.

34. The Registration Statement was materially false and misleading and omitted to state that: (1) Uxin was likely to stop providing complementary services such as inspections to its customers; (2) instead, Uxin would connect consumers to dealers who would provide such complementary services; (3) as a result, Uxin's 2B business would be materially impacted; and (4) consequently, Defendants' statements in the Registration Statement regarding Uxin's business, operations, and prospects, were materially false and/or misleading.

**THE SUBSEQUENT DISCLOSURE**

9

35. On August 22, 2018, in connection with its second quarter 2018 financial results, Uxin announced a strategic change to its 2B business. Uxin stated, in relevant part:

> [W]e historically provided inspection and other complementary services that enabled consumers to sell used cars through our 2B business. Starting in the second half of 2018, we will take an alternative approach that connects these consumers with quality dealers on our platform without us providing inspection and other services directly. Due to this change to our service approach, we will no longer record the corresponding GMV, which has historically made an immaterial contribution to our overall business. Our B2B auction business remains unchanged.

36. On November 19, 2018 after the market closed, in a press release announcing unaudited third quarter 2018 financial results, Uxin reported that transaction volume for the 2B business had decreased to 91,844 units, or a year-over-year decline of 8.5%, and GMV had decreased to RMB 4,279 million, or a year-over-year decline of 14.8%. Uxin attributed these results to its "recent change of approach in serving customers with car-selling needs as disclosed in the prior quarter." Excluding the impact of this change, "the B2B business experienced 13.3% year-on-year growth in terms of GMV."

37. Following this news, Uxin's share price fell $0.60 per share, or approximately 11.7%, to close at $4.50 on November 20, 2018. This constituted a decline of 50% from the $9 IPO price.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and/or entities who purchased or otherwise acquired the securities of Uxin pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's IPO, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the officers, directors and affiliates of Defendants, at all relevant

10

times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable There were 25 million ADSs sold in the IPO. Since the IPO, the Company's ADSs have actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds, if not thousands, of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Uxin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the Securities Act;

(b) whether statements made by Defendants to the investing public in the Registration Statement were false and/or misrepresented material facts about the business and operations of Uxin; and

   (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

  43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

  44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

   (a) Defendants made public misrepresentations or failed to disclose material facts;

   (b) the omissions and misrepresentations were material;

   (c) the Company's securities met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

   (d) the Company's shares were liquid and traded with moderate to heavy volume;

   (e) as a public issuer, the Company filed periodic public reports with the SEC and NASDAQ;

   (f) The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-

ranging public disclosures, such as communications with the financial press and other similar reporting services;

(g) The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available;

(h) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(i) Plaintiff and members of the Class purchased, acquired and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972) as Defendants omitted material information in the Company's Registration Statement and Prospectus in violation of a duty to disclose such information as detailed above.

## COUNT I
### Violations of §11 of the Securities Act
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

49. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.

50. The Company is the issuer of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially untrue statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

51. The Individual Defendants each signed the Registration Statement or authorized the signing of the Registration Statement on their behalf. As such, each is strictly liable for the materially inaccurate statements contained therein and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Individual Defendants each had duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, and to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

52. The Underwriter Defendants each served as underwriters in connection with the IPO. As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. These defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

53. By reason of the conduct herein alleged, each Defendant named herein violated, §11 of the Securities Act.

54. Plaintiff acquired Uxin securities pursuant or traceable to the Registration Statement used for the IPO without knowledge of the material omissions or misrepresentations alleged herein.

55. Plaintiff and the Class have sustained damages, as the value of Uxin securities has declined substantially subsequent to and due to these Defendants' violations.

56. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

## COUNT II
### Violations of §15 of the Securities Act
### Against Uxin and the Individual Defendants

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. This Cause of Action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, against Uxin, and the Individual Defendants.

59. The Individual Defendants each were control persons of Uxin by virtue of their positions as directors and/or senior officers of Uxin. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Uxin.

60. Uxin controlled the Individual Defendants and all of its employees.

61. Uxin and the Individual Defendants were each critical to effecting the IPO, based on their signing or authorization of the signing of the Registration Statement, by voting to execute the IPO and by having otherwise directed through their authority the processes leading to the execution of the IPO.

62. By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act. As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's securities.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 11, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*