**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK MACHNIEWICZ, Individually and on behalf of all others similarly situated, | Case No: 1:19-cv-0822-MKB-VMS |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| UXIN LIMITED, KUN DAI, ZHEN ZENG, RONG LU, JULIAN CHENG, DOU SHEN, HAINAN TAN, MORGAN STANLEY & CO. INTERNATIONAL PLC, GOLDMAN SACHS (ASIA) L.L.C., J.P. MORGAN SECURITIES LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, and CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND <u>ESTABLISHING NOTICE PROCEDURE</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................................1

II.     FACTUAL BACKGROUND........................................................................................2

        A.      The State Court Action ...................................................................................2

        B.      The Federal Action .........................................................................................4

        C.      Mediation, Negotiations, and Settlement........................................................5

III.    PROPOSED SCHEDULE OF EVENTS.....................................................................5

IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
        APPROPRIATE.............................................................................................................6

        A.      The Standards for Preliminary Approval........................................................6

        B.      Plaintiffs and Their Counsel Have Adequately Represented the Class ...................8

        C.      The Proposed Settlement Is the Result of Good Faith Arm's-Length
                Negotiations by Informed, Experienced Counsel Who Were Aware of the
                Risks of the Litigation....................................................................................8

        D.      The Relief Provided to the Class is Adequate ...............................................9

                1.      The Substantial Benefits for the Class, Weighted Against the
                        Costs, Risks and Delay of Trial and Appeal Support Preliminary
                        Approval .............................................................................................9

                        a.      The Complexity, Expense, and Likely Duration of the
                                Litigation................................................................................10

                        b.      The Stage of the Proceedings and the Amount of Discovery
                                Completed ..............................................................................11

                        c.      The Risk of Establishing Liability and Damages .........................11

                        d.      The Risks of Maintaining the Class Action Through Trial............12

                        e.      The Ability of Defendants to Withstand a Greater Judgment
                                and The Reasonableness of the Settlement Fund..........................13

                2.      The Proposed Method for Distributing Relief is Effective........................14

                3.      Attorneys' Fees, Reimbursement of Expenses, and Award to
                        Federal Plaintiffs......................................................................................14

|   |   |   |   |
|---|---|---|---|
|   | 4. | The Parties Have Agreed to a Side Agreement Regarding Opt-Outs | ..........14 |
|   | E. | There Was No Preferential Treatment; The Plan is Designed to Treat Settlement Class Members Equitably | ..........15 |
| V. | | CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE | ..........15 |
|   | A. | Numerosity | ..........16 |
|   | B. | Commonality | ..........17 |
|   | C. | Typicality | ..........18 |
|   | D. | Adequacy | ..........18 |
|   | 1. | Adequacy of the Proposed Class Representatives | ..........19 |
|   | 2. | Rule 23(g) Adequacy of the Proposed Class Counsel | ..........19 |
|   | E. | Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication | ..........21 |
| VI. | | THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS | ..........23 |
| VII. | | THIS COURT HAS JURISDICTION TO APPROVE THE SETTLEMENT IN THE STATE COURT ACTION | ..........25 |
| VIII. | | CONCLUSION | ..........25 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .............................. 21

*Amchem Products, Inc., v. Windsor*,
521 U.S. 591 (1997) .................................................................................... 15, 16, 21, 22

*Araujo v. Uxin Ltd.*,
2019 WL 3250017 (Sup. Ct. N.Y. Cty. July 15, 2019) ........................................................ 3

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .................................................................................. 20

*Cagan v. Anchor Sav. Bank FSB,*
1990 WL 73423 (E.D.N.Y. May 22, 1990) ...................................................................... 13

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .................................................................................... 20

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ....................................................................................................... 7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ........................................................................................ 16

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......................................................................................... 9

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) ............................................................................ 23

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .......................................................................................... 16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ............................................................................................ 8

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) .................................................................................. 21

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) .................................................................................. 19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990) ................................................................................................. 18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) .............................................................................................................. 12

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................. 15

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................. 10, 11

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................................... 15

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................... 7, 17, 18, 19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) ........................................................................................... 17

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................... 12, 17

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................................... 9

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................... 13, 19, 22

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................... 25

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................................... 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................................... 14

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ........................................................................................... 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................ 10

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................................. 16, 17, 18

*In re Warner Commc'ns Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986).................................................................................................. 9

*In re Wilmington Tr. Sec. Litig.*,
   No. 10-CV-0990-ER, 2018 WL 6046452 (D. Del. Nov. 19, 2018)......................................... 25

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015).............................................................................................. 17

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ........................................................................................ 16

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................. 20

*Leung v. Home Boy Rest. Inc.*,
   No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................................... 8

*Marisol A. by Forbes v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996) .................................................................................... 18

*Matter of Uxin Ltd. Sec. Litig.*,
   2020 WL 1146636 (Sup. Ct. N.Y. Co. Mar. 9, 2020).............................................................. 3

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)......................................................................................................... 25

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419 (S.D.N.Y. June 22, 2012) ............... 6

*Pasini v. Fishs Eddy, LLC*,
   No. 1:16-CV-00354-PGG, 2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018) .............................. 15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)......................................................................................................... 22

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
   No. 11-CV-05801 DLI VVP, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ......................... 11

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).............................................................................................. 16

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 23

*Spann v. AOL Time Warner Inc.*,
   No. 02 CIV. 8238DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)...................................... 7

*Vargas v. Cap. One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ............................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ........................ 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .................................................................. 6, 8

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ...................................................................... 15

*Wilson v. LSB Indus., Inc.*,
No. 15CIV7614RAGWG, 2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .............................. 20

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) .............................. 20

*Zubrinski, et al., v. BioAmber Inc., et. al.*,
Case No. 2:17-cv-01531 (E.D.N.Y.) ....................................................... 24

## Statutes

15 U.S.C. § 77l(b) ....................................................................................... 12

15 U.S.C. § 77k(e) ...................................................................................... 12

15 U.S.C. §78aa .......................................................................................... 22

15 U.S.C. § 78u-4(a)(7) ........................................................................ 23, 24

## Rules

Fed. R. Civ. P. 23 ................................................................................. passim

## Other Authorities

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986).. 21

*Manual for Complex Litigation* (Fourth) § 21.632 ................................... 16

## I.    INTRODUCTION

Lead Plaintiff Saleh Doron Gahtan ("Gahtan") and named plaintiff Daniel Chiu ("Federal Court Plaintiffs"), along with State Court Plaintiffs Adam Franchi, Raul Araujo, Lei Liang, and Mark Lee (Federal Court Plaintiffs and State Court Plaintiffs are collectively the "Plaintiffs") submit this memorandum of law in support of their motion for preliminary approval of the settlement of this putative class action on the terms set forth in the Stipulation of Settlement dated April 1, 2021 (the "Stipulation" or "Settlement").[1] The Stipulation includes the settlement of the parallel action pending in the Supreme Court of the State of New York, County of New York captioned *In re Uxin Limited Securities Litigation,* Index No. 650427/2019 (the "State Court Action"). The Settlement provides a payment by or on behalf of Defendants of $9,500,000 for the benefit of the Settlement Class. This favorable Settlement is the result of hard-fought, arm's-length negotiations between the Parties with the substantial assistance of Mr. Robert A. Meyer, Esq. of JAMS, a respected mediator with considerable experience mediating complex securities actions. The Settlement resolves all claims against Defendants.

Plaintiffs ask the Court to enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"). As part of the Settlement, Plaintiffs request the certification of the Settlement Class set forth in the Stipulation as well as the form, substance, and manner of dissemination of the Notice of Proposed Settlement of Class Action ("Notice"), the Proof of Claim and Release ("Proof of Claim"), and the Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), appended as Exhibits A-1 to A-3 to the Notice Order. Plaintiffs also request that the Court schedule a Settlement Fairness Hearing to consider the final

---

[1] All capitalized terms not otherwise defined shall have the same meanings as set forth in the Stipulation.

approval of the Settlement, the Plan of Allocation, counsel's request for attorneys' fees and expenses, and Plaintiffs' request for service awards for their time and expenses in representing the Settlement Class.

Plaintiffs submit that the Settlement is a favorable result for the Settlement Class, especially considering the risk of a much smaller or even no recovery if the case were to proceed through discovery, summary judgement, trial, and the inevitable appeals. During the litigation, Plaintiffs' Counsel conducted a comprehensive investigation – including retaining a Chinese investigator to conduct interviews in China – and significant motion practice. The Parties also participated in extensive settlement negotiations where the strengths and weaknesses of the Parties' respective positions were fully explored and debated. Plaintiffs' Counsel therefore had sufficient information to make an informed decision regarding the fairness of the Settlement. For the reasons stated herein, Plaintiffs request that the Court grant their motion.

## II.    FACTUAL BACKGROUND

### A. The State Court Action

On January 22, 2019, plaintiff Mark Lee filed a putative class action in State Court against Defendants alleging violations of Sections 11 and 15 of the Securities Act on behalf of all persons who purchased or otherwise acquired Uxin ADSs pursuant or traceable to Uxin's Registration Statement and Prospectus issued in connection with Uxin's June 27, 2018 IPO. Additional complaints were filed by State Court Plaintiffs Adam Franchi, Lei Liang and Paul Araujo between January 25 and 31, 2019, and a joint Amended Complaint was filed by Lee, Franchi, Liang and Araujo on March 21, 2019. NYSCEF No. 8. State Court Plaintiff Kyle Buckley then filed a complaint on April 30, 2019 alleging similar violations of the Securities Act as well as violations of Section 12(a)(2).

On July 7, 2019, the State Court granted the parties' joint stipulation to consolidate the five pending cases and appointed Robbins Geller Rudman & Dowd LLP, Wolf Haldenstein Adler Freeman & Herz LLP, Glancy Prongay & Murray LLP, and Hach Rose Schirripa & Cheverie LLP as lead counsel ("State Court Lead Counsel"). NYSCEF No. 23. On August 5, 2019, the State Court Plaintiffs filed their Consolidated Amended Complaint. NYSCEF No. 65.

On July 15, 2019, the State Court denied Defendants' motion to stay the State Court Action in favor of the Federal Court Action. *See Araujo v. Uxin Ltd.*, 2019 WL 3250017, at *1 (Sup. Ct. N.Y. Cty. July 15, 2019). On August 6, 2019, the State Court denied Defendants' motion to stay discovery in the State Court Action because there was no pending motion to dismiss the Complaint. NYSCEF No. 67. The State Court Plaintiffs did not immediately seek discovery because Defendants were planning to file a motion to dismiss, and the State Court's decision in another action that the Private Securities Litigation Reform Act of 1995 precluded such discovery in New York state court.

On March 9, 2020, the State Court partially denied Defendants' motion to dismiss the State Court Action, ordered Defendants to answer the State Court Complaint by April 8, 2020, and set a preliminary conference for April 13, 2020. *Matter of Uxin Ltd. Sec. Litig.*, 2020 WL 1146636, at *11 (Sup. Ct. N.Y. Co. Mar. 9, 2020). Due to the impact of COVID-19, the conference was rescheduled to July 15, 2020. Following the State Court's partial denial of the motion to dismiss the State Court Action, the parties also agreed to explore mediation, thus stipulating to discovery extensions as well as extension of time for certain Defendants to file their answers. NYSCEF No. 112. Certain Defendants filed their Answers on July 10, 2020. NYSCEF Nos. 116-17.

On March 12, 2020, the Defendants filed a Notice of Appeal from the State Court's order partially denying their motion to dismiss the State Court Action, and on May 4, 2020, the State

3

Court Plaintiffs filed a Notice of Cross-Appeal.  NYSCEF Nos. 100, 102.  Defendants filed their Joint Brief and the record on July 13, 2020; the State Court Plaintiffs filed their Joint Brief on August 12, 2020, Defendants filed their Reply Brief on August 21, 2020 and the State Court Plaintiffs filed their Reply Brief on August 31, 2020.

Pursuant to the July 27, 2020 Case Management Order in the State Court Action. fact discovery proceeded.  Specifically: (i) the State Court Plaintiffs served document requests; (ii) the State Court Plaintiffs proposed discrete categories of centrally stored documents to Defendants for production; (iii) the State Court Plaintiffs objected and responded to Defendants' document requests; (iv) the parties reached a tentative agreement on the categories of centrally stored documents that Defendants would produce; (v) the State Court Plaintiffs substantially completed their document production to Defendants; and (vi) the State Court Plaintiffs served numerous third-party subpoenas. NYSCEF No. 119 (as modified).

On November 10, 2020, the State Court Plaintiffs filed their motion for class certification. NYSCEF Nos. 126-136.  These proceedings are being held in abeyance in light of the agreement in principle. NYCEF Nos. 124 and 138.

**B.  The Federal Action**

On February 11, 2019, plaintiff Patrick Machniewicz filed a putative class action complaint in this Court which asserted claims under the Securities Act against the same Defendants named in the State Court Action.  On August 14, 2019, the Court entered an order appointing Gahtan as Lead Plaintiff and approving Gahtan's selection of The Rosen Law Firm, P.A. as Lead Counsel. ECF Docket Entry on August 14, 2019.

On October 25, 2019, Gahtan and plaintiff Daniel Chiu filed an amended complaint (the "Federal Court Complaint").  ECF No. 19.  The Federal Court Complaint asserts claims under

Sections 11, 12(a)(2) and 15 of the Securities Act as well as claims against the Uxin Defendants under Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  The Federal Court Complaint was brought on behalf of all purchasers of Uxin ADSs from June 27, 2018 through April 15, 2019, inclusive.

On January 10, 2020, Defendants served their motion to dismiss the Federal Court Action for failure to state a claim.  The Federal Court Plaintiffs served their opposition papers on March 9, 2020, and Defendants served their reply papers on April 24, 2020,  ECF Nos. 24-27.

On May 5, 2020, the parties in the Federal Court Action applied to the Court to stay the action pending outcome of a mediation agreed to by the parties.  ECF No. 35.  The Court granted the application on May 6, 2020.  ECF Docket entry on May 6, 2020.  At the Federal Court Action parties' request, the Court lifted the stay on September 4, 2020, but the Court entered a second stay on December 10, 2020 due to the parties' representation that they reached a settlement in the litigation.  ECF Nos. 36, 41 and Docket Entries on September  4, 2020 and December 10, 2020.

### C.  Mediation, Negotiations, and Settlement

On June 5, 2020, after exchanging detailed mediation statements, the Federal Court Plaintiffs, State Court Plaintiffs, and Uxin Defendants attended an all-day virtual mediation with Mr. Robert A. Meyer of JAMS.  The Parties were unable to reach a settlement at the mediation session.  However, the Parties and Mr. Meyer continued to engage in negotiations over the next six months to achieve a global resolution of the Actions.  On December 10, 2020, after months of negotiations, the Parties agreed to the $9.5 million Settlement, subject to Court approval.

### III.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Fairness Hearing as set forth in the Notice Order, as follows:

5

| Event | Deadline for Compliance |
|---|---|
| Mailing of Notice and Proof of Claim and Release. | No later than 21 calendar days after the entry of Notice Order. (Notice Order ¶8) (the "Notice Date") |
| Publication of Summary Notice. | No later than 10 calendar days after the Notice Date. (Notice Order ¶9) |
| Deadline for filing Proofs of Claim. | No later than 90 calendar days after the Notice Date. (Notice Order ¶12) |
| Deadline for requests for exclusion. | Postmarked no later than 60 calendar days after the Notice Date (Notice Order ¶13) |
| Deadline for objections. | Received no later than 60 calendar days after the Notice Date (Notice Order ¶14) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 14 calendar days prior to the deadline for objections (Notice Order ¶16) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Fairness Hearing. (Notice Order ¶26) |
| Settlement Fairness Hearing | At least 135 days after the entry of the Notice Order |

Plaintiffs respectfully request that the Court schedule the Settlement Fairness Hearing at least 135 days after entry of the Notice Order in order for there to be sufficient time for Settlement Class Members to make any requests for exclusions and file objections, and for Plaintiffs' Counsel to file the motion in support of final approval of the Settlement and the Plan of Allocation, make application for attorneys' fee and expenses, as well as file the reply in support of final approval.

## IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.  The Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed. *Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419, at \*7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart*

6

*Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007). When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)      ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)      the class representatives and class counsel have adequately represented the class;
>>
>> (B)      the proposal was negotiated at arm's length;
>>
>> (C)      the relief provided for the class is adequate, taking into account:
>>
>>> (i)      the costs, risks, and delay of trial and appeal;
>>> (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii)      the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

### B. Plaintiffs and Their Counsel Have Adequately Represented the Class

Plaintiffs and their counsel have diligently prosecuted the Actions on the Settlement Class's behalf, including by thoroughly investigating the facts, drafting detailed pleadings, briefing Defendants' motions to dismiss, commencing discovery in the State Court Action and negotiating a favorable settlement that provides recovery to the Settlement Class in the face of substantial obstacles related to litigation against China-based Defendants.

### C. The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"). A mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . helps to ensure that the proceedings were free of collusion and undue pressure").

From their efforts in this action. Plaintiffs were armed with sufficient information to evaluate the Settlement's benefits and drawbacks. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an

informed decision about settlement.") (internal quotations omitted). Informal information sharing

is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay. *In re*

*Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

As discussed above, the parties participated in mediation before an experienced mediator

after exchanging detailed mediation statements. While the session ended without an agreement,

negotiations continued over the course of the next few months, culminating in the Parties'

agreement in principle to settle the Actions for $9.5 million.

The negotiations were hard-fought and produced a result that the Parties believe to be in

their respective best interests. The arm's-length nature of the negotiations and the mediator's

involvement support the conclusion that the Settlement is fair and was achieved free of collusion.

## D.  The Relief Provided to the Class is Adequate

### 1.  The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval

The principal factors in evaluating the fairness of a proposed settlement in the Second

Circuit, set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In weighing these factors, courts recognize that settlements require significant

compromise between negotiating parties. Courts do not attempt to rewrite settlement agreements

or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In*

*re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job

9

to dictate the terms of a class settlement."). It is not possible to evaluate the reaction of the class to the settlement at this time as notice of the Settlement has not yet been disseminated. Plaintiffs, however, support the Settlement.

### a.    The Complexity, Expense, and Likely Duration of the Litigation

Courts generally recognize that securities class actions are "generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020)l *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage.").

The Settlement provides a guaranteed, immediate recovery to Settlement Class Members. If the Settlement were not reached, the parties would have to incur substantial additional costs and engage in prolonged litigation through a decision on the motion to dismiss in the Federal Court Action, class certification, the State Court cross-appeals, summary judgment, trial and inevitable further appeals. Discovery costs, including document production and hosting fees as well as experts could be in the several hundred thousand dollar range. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses.

In addition to being complex due to its nature of being a securities class action, this is an action where most, if not all, of the evidence are located abroad in the People's Republic of China. Uxin is a China-based company and the Individual Defendants are Chinese nationals. Having Chinese defendants and witnesses complicates litigation. Plaintiffs face significant obstacles conducting discovery against Chinese Defendants and witnesses. Also, "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States

10

convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Documents produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

### b. The Stage of the Proceedings and the Amount of Discovery Completed

Plaintiffs were able to conduct a thorough and informed investigation. Plaintiffs engaged an investigator in China to conduct interviews with relevant witnesses in China. Plaintiffs also obtained relevant Chinese regulatory filings. In addition, Plaintiffs engaged an expert to analyze damages. Moreover, Plaintiffs in both the Federal Court Action and State Court Action responded to Defendants' motion to dismiss, permitting them to evaluate the strengths and weaknesses of the case. Although formal discovery was stayed in the Federal Action pursuant to the PSLRA, by thoroughly investigating the case and working with their experts, Plaintiffs had the information they needed to evaluate the Settlement. *Am. Bank Note*, 127 F. Supp. 2d at 425-426 ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### c. The Risk of Establishing Liability and Damages

This action entails substantial risks and further prosecution may have yielded limited or no recovery. A motion to dismiss is pending in the Federal Court Action, and Defendants raised

colorable arguments in their appeal of the State Court's partial denial of their motion to dismiss. Even if Plaintiffs in survive Defendants' challenges on the pleadings, Plaintiffs face significant obstacles obtaining enough proof from Defendants and witnesses in China to survive summary judgment. Plaintiffs would also encounter significant loss causation defenses and damages arguments that could substantially reduce or even eliminate Plaintiffs' alleged damages. If they survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. If they won at trial, Plaintiffs would have to survive Defendants' inevitable appeals. Through this period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks and provides an immediate and guaranteed benefit to the Settlement Class.

### d. The Risks of Maintaining the Class Action Through Trial

For class certification, Plaintiffs must show that common issues predominate over individual issues. To do so, on their Section 10(b) claims, Plaintiffs must show that Uxin's ADSs traded on an efficient market, entitling purchasers to the presumption of reliance on Defendants' allegedly materially false statements. On their Securities Act claims, Defendants would be permitted to establish a negative causation defense that the alleged false statements did not have an impact on Uxin's stock price. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014); 15 U.S.C. §§77k(e), 77l(b). Even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the

12

uncertainty surrounding class certification supports approval of the Settlement." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009).

> **e.      The Ability of Defendants to Withstand a Greater Judgment and The Reasonableness of the Settlement Fund**

Uxin is based in China, and its assets are primarily in China. The Individual Defendants are Chinese nationals. Judgments obtained in the United States are not enforceable in China. Even if Plaintiffs were to obtain a judgement against Defendants, there is no guarantee that Plaintiffs will be able to collect any of the judgment. While Uxin's D&O insurance is financing the defense of the lawsuit and the Settlement, the amount of Uxin's available insurance would become substantially depleted if this action were to proceed, eliminating the single most certain source for Plaintiffs to obtain a monetary recovery. Despite these limitations, the proposed Settlement recovers $9.5 million for the Settlement Class. Taking an aggressive damages analysis that includes all stock drops, damages are estimated to be $206 million. The Settlement thus returns approximately 4.6% to investors. The Settlement Amounts is reasonable as Cornerstone Research found that for securities class action cases with damages estimated between $150 million and $249 million, the median recovery from 2010 to 2018 was 4.0% of total damages, and the median recovery for 2019 was 4.8% of total damages. *See* Cornerstone Research: Securities Class Actions Settlements, 2019 Review and Analysis, attached as Exhibit 1 to the Declaration of Laurence M. Rosen ("Rosen Decl."). This Settlement, which represents 4.6% of maximum damages potentially recoverable, is therefore within the range to be considered reasonable. *Cagan v. Anchor Sav. Bank FSB,* 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."). And it is a far greater percentage than Defendants' estimate, which was as low as $0.

## 2.     The Proposed Method for Distributing Relief is Effective

As demonstrated below in Section VI, the method of the proposed notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiffs' financial consultant.

## 3.     Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Plaintiffs' Counsel intends to seek an award of attorneys' fees of no more than one third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $100,000, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund. This fee request is in line with other settlements approved in recent cases. "{I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014).

## 4.     The Parties Have Agreed to a Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Uxin ADSs represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation ¶10.3. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives

14

for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

**E. There Was No Preferential Treatment; The Plan is Designed to Treat Settlement Class Members Equitably**

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *Pasini v. Fishs Eddy, LLC*, No. 1:16-CV-00354-PGG, 2018 WL 6843905, at *2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the Settlement Class"). The Plan, set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants and provides that each Settlement Class Member will receive the same per-share amount.

**V. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE**

In preliminarily approving the proposed Settlement, this Court must consider whether to certify the Settlement Class under Rules 23(a) and (b)(3). *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Amchem,* 521 U.S. at 620;

15

*Manual for Complex Litigation* (Fourth) § 21.632.  To certify a class, the Court must determine whether four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Rule 23(b). *Id.* at 614. In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Further, at this point, the Court need not conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). Here, the proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

### A. Numerosity

Rule 23(a)(1) requires a class be sufficiently large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). But "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs need only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). Although the exact size of the Settlement Class is not yet known, the numerosity requirement is satisfied in a securities class action as "a large number of shares were outstanding and traded during

16

the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *EVCI*, 2007 WL 2230177 at *12 (numerosity requirement is generally met in cases involving nationally traded securities.).

Here, 25 million ADSs were sold in Uxin's IPO, and Uxin's ADSs were publicly and actively traded on NASDAQ during the Settlement Class Period. There are likely at least hundreds, if not thousands, of potential Settlement Class Members. Thus, the numerosity requirement is met.

**B. Commonality**

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id.; see also Vivendi*, 242 F.R.D. 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of class wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in Uxin's Registration Statement, as well as the

17

measure of damages.

### C. Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the class members. Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177, at \*13.; *Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Here, Plaintiffs are the proposed class representatives, and their claims are similar to those of the other members of the Settlement Class. Like the Settlement Class, Plaintiffs purchased Uxin ADSs at prices that were allegedly artificially inflated by Defendants' misrepresentations, and Plaintiffs was harmed in the same way when the truth emerged. Plaintiffs' claims stand or fall with those of the Settlement Class, and thus, they are typical.

### D. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, the showing that the interests of the representative parties will not conflict with the interests of

18

Settlement Class Members, and second, the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. *Marsh & McLennan*, 2009 WL 5178546, at *10. Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. In any event, both prongs of the adequacy requirement are satisfied here.

### 1.   Adequacy of the Proposed Class Representatives

Plaintiffs do not have interests antagonistic to those of the proposed Settlement Class Members. Plaintiffs purchased Uxin ADSs during the Settlement Class Period and were damaged thereby. Plaintiffs are seeking, on their own behalf and on behalf of all members, to recover from Defendants damages caused by Defendants' alleged misconduct. Plaintiffs' interests are congruent with other Settlement Class Members' interests.

### 2.   Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel, The Rosen Law Firm, P.A., has extensive experience prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country, including in the Eastern District of New York. Courts have consistently found Lead Counsel to be well-suited as class counsel in securities class actions and have recognized Lead Counsel as having particular experience litigating cases against Chinese issuers such as Uxin. *See Khunt v. Alibaba*

*Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015) ("[Lead Counsel] has extensive experience navigating the particular complexities of litigation with Chinese companies.") Lead Counsel's firm resume was previously submitted to the Court as ECF No. 7-4.

State Court Lead Counsel , Robbins Geller Rudman & Dowd LLP, Wolf Haldenstein Adler Freeman & Herz LLP, Glancy Prongay & Murray LLP, and Hach Rose Schirripa & Cheverie LLP are also highly experienced practitioners in prosecuting securities class actions.  "Courts within this Circuit have repeatedly found [Robbins Geller] to be adequate and well-qualified for the purpose of litigating class action lawsuits." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015). *See also Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012) ("courts within this Circuit have repeatedly found [Robbins Geller] to be adequate and well-qualified for the purposes of litigating class action lawsuits"); *Wilson v. LSB Indus., Inc.*, No. 15CIV7614RAGWG, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing Glancy as class counsel since they have "extensive experience serving as lead or co-lead counsel in class action securities litigation" and "performed adequately in this litigation" and noting "We have full confidence that they will fairly and adequately represent the interests of the class"); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ("Counsel [including Hach Rose] all have ample experience in class action litigation. Altogether, the high quality of representation warrants the requested fee award."). State Court Lead Counsel's firm resumes are attached as Exhibits 2-5 to the Rosen Decl.

Plaintiffs' Counsel spent considerable time for the benefit of the Settlement Class including: conducting a thorough investigation including retaining a private investigator in China and experts; obtaining and analyzing Chinese documents; opposing Defendants' motion to dismiss; conducting discovery and moving for class certification in the State Court Action; and

preparing for and participating in the mediation and settlement discussions. Plaintiffs' Counsel's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation.

### E. Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, the existence of common questions predominates over individual issues, exemplified by the fact that if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.

Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many, if not most, of the Settlement Class Members are individuals for whom prosecution of a complex and costly action on their own behalf does not provide a realistic or efficient alternative. This Court is an appropriate forum because pursuant to 15 U.S.C. §78aa, Uxin may be properly sued in any district court in the United States; moreover, Uxin's ADSs trade on NASDAQ which is located in this district. Additionally, as to Rule 23(b)(3)(D), Plaintiffs believe no difficulties will be encountered in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. *See also Amchem*, 521 U.S. at 617 ("[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). And if individuals *do* have the means to litigate their own case, absent a class action, this Court would have to try many lawsuits.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute

22

that the Settlement Class should be certified in accordance with Rule 23(b)(3).

## VI. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition, to how delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (internal citations omitted).

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including how objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a claim; (e) a description of the Plan; (f) the fees and expenses sought by Lead Counsel; and (g) the necessary information to examine Court records. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in a "street name." The

23

proposed Notice closely tracks a model notice published by the Federal Judicial Center.[2]

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Judgment. PSLRA-mandated disclosures are also satisfied as the Notice: (1) states the amount of the Settlement on an aggregate and average per share basis; (2) provides a brief statement explaining why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order mandates that Plaintiffs' Counsel provide Settlement Class Members notice of the Settlement by either: (a) emailing the Notice and Proof of Claim to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses[3] or (b) mailing the Notice and Proof of Claim, if an email address cannot be obtained, by first class mail to Settlement Class Members who can be identified with reasonable effort. Also, after entry of the Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim will be posted on the Claims Administrator's website. Additionally, Summary Notice will be published electronically over a national newswire.

The proposed Notice and its dissemination are "reasonably calculated, under all the

---

[2] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf (last accessed: April 1, 2021)

[3] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an electronic means of notice. Providing electronic notice to class members by email, if obtained, will reduce administration costs and ultimately benefit the class. The courts have approved electronic notice in securities class action settlements. *See Zubrinski, et al., v. BioAmber Inc., et. al.,* Case No. 2:17-cv-01531 (E.D.N.Y.) (Dkt. No. 59).

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts routinely find that these methods of notice are sufficient. *See, e.g.*, *In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ER, 2018 WL 6046452, at *4 (D. Del. Nov. 19, 2018) (approving substantially similar notice plan); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (same).

## VII.   THIS COURT HAS JURISDICTION TO APPROVE THE SETTLEMENT IN THE STATE COURT ACTION

This Court may approve the settlement in the State Court Action because the State Court Action alleges the same violations of federal securities laws - specifically Sections 11 and 15 of the Securities Act – on behalf of the same class of Uxin shareholders as the Federal Court Action. In other words, the claims in the State Court Action and the class on behalf of which they are brought overlaps with (and indeed, are encompassed by) the Federal Court Action. Accordingly, the State Court Plaintiffs, the Federal Court Plaintiffs, and Defendants do not dispute that this Court has jurisdiction to approve the settlement in the State Court Action.

## VIII.   CONCLUSION

For the above-stated reasons, Plaintiffs request that the Court: (1) preliminarily certify the Class for the purposes of Settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Fairness Hearing.

Dated: April 2, 2021

Respectfully submitted,

*/s/ Laurence M. Rosen*
Laurence M. Rosen
(lrosen@rosenlegal.com)
Phillip Kim
(pkim@rosenlegal.com)
Yu Shi
(yshi@rosenlegal.com)
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor

25

New York, NY 10016
Tel: (212) 686-1060

*Lead Counsel for Plaintiffs Saleh Doron
Gahtan, Daniel Chiu and the Proposed
Class in the Federal Court Action*

Brian Schall
(brian@schallfirm.com)
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964

*Additional Counsel to Plaintiffs Saleh
Doron Gahtan, Daniel Chiu and the
Proposed Class in the Federal Action*

-and-

Samuel Rudman
(srudman@rgrdlaw.com)
Michael G. Capeci
(mcapeci@rgrdlaw.com)
Magdalene Economou
(meconomou@rgrdlaw.com)
ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Tel.: (631) 367-7100

*Counsel for the Proposed Class in the State
Court Action*

Casey Sadler
(csadler@glancylaw.com)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Tel: (310) 201-9150

Daniella Quitt
(dquitt@glancylaw.com)
GLANCY PRONGAY & MURRAY LLP
712 Fifth Avenue, 31st Floor
New York, NY  10019

26

Tel: (212) 935-7400

*Counsel for Plaintiff Mark Lee and the Proposed Class in the State Court Action*

Mark Rifkin
(rifkin@whafh.com)
Kevin G. Cooper
(kcooper@whafh.com)
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY  10016
Tel: (212) 545-4600
Fax: (212) 686-0114

*Counsel for Plaintiff Lei Liang and the Proposed Class in the State Court Action*

Frank R. Schirripa
(fschirripa@hrsclaw.com
Kurt Hunciker
(khunciker@hrsclaw.com)
Seth M. Pavsner
(spavsner@hrsclaw.com)
HACH ROSE SCHIRRIPA
    & CHEVERIE LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 779-0028

*Counsel for Plaintiff Adam Franchie and the Proposed Class in the State Court Action*

27

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2021, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Laurence M. Rosen*
Laurence M. Rosen

28