**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK MACHNIEWICZ, Individually and on behalf of all others similarly situated, | Case No: 1:19-cv-0822-MKB-VMS |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| UXIN LIMITED, KUN DAI, ZHEN ZENG, RONG LU, JULIAN CHENG, DOU SHEN, HAINAN TAN, MORGAN STANLEY & CO. INTERNATIONAL PLC, GOLDMAN SACHS (ASIA) L.L.C., J.P. MORGAN SECURITIES LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, and CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL .................................... 3

   A. The Settlement is Entitled to a Presumption of Fairness Because it is the Product of
      Arm's-Length Negotiations Among Experienced Counsel Before an Experienced
      Mediator ............................................................................................................ 3

   B. The Settlement is Substantively Fair, Reasonable and Adequate Under the Grinnell
      Factors .............................................................................................................. 5

        1.   Continued Litigation Would be Complex, Expensive, and Protracted ...................... 6

        2.   The Lack of Objections or Opt-Outs Support Final Approval ............................. 8

        3.   Plaintiffs had Sufficient Information to Make Informed Decisions About Settling this
             Case ..................................................................................................... 10

        4.   Plaintiffs Faced Risks in Establishing Liability and Damages................................ 11

        5.   Risks of Maintaining Class Action Status Through Trial .......................................... 14

        6.   The Ability of Defendants to Withstand Greater Judgment...................................... 15

        7.   The Settlement Amount is in the Range of Reasonableness in Light of the Best
             Possible Recovery and All the Attendant Risks of Litigation................................... 15

   C. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors ........................................ 17

        1.   Attorneys' Fees...................................................................................................... 17

        2.   The Parties Have No Other Agreements Aside from Opt-Outs and Disclosed Fee
             Arrangements ..................................................................................................... 18

   D. The Plan of Allocation Should Be Approved ................................................................ 18

   E. Notice to the Settlement Class Satisfied all the Requirements of Rule 23 and Due Process
      .......................................................................................................................... 20

   F. Final Certification of the Settlement Class ...................................................................... 21

III. THE COURT HAS JURISDICTION TO APPROVE THE GLOBAL SETTLEMENT.... 22

IV. CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ............................................................................. 6, 20

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    137 S. Ct. 1773 (2017) ............................................................................................ 14

*Burns v. FalconStor Software, Inc.*,
    No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014).................................. 4

*Christina Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............. 12, 18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................................... 5, 11, 15

*City of Providence v. Aeropostale*,
    No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................ 6

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................................... 4, 5

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992).................................................................................. 16

*Hayes v. Harmony Gold Min. Co.*,
    509 F. App'x 21 (2d Cir. 2013) ................................................................................. 5

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................ 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................... 11

*In re Agent Orange Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985)........................................................................... 17

*In re Alloy, Inc. Sec. Litig.*,
    No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .................................. 7

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................. 8, 9, 19

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................ passim

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................................ passim

*In re China Sunergy Sec. Litig.*,
   No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 16

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................................... 4

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................................... 6

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...................................... 19

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................................ 4, 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................... 15

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016)................................................................................... 17

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 12, 13, 14, 18

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................. passim

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................................... 19

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................. 3, 13, 14, 19

*In re Merrill Lynch & Co., Inc. Rsch Reps. Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................................... 9

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ...................................... 20

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) .................................................................................................... 3

*In re Sony Corp. SXRD*,
    448 F. App'x 85 (2d Cir. 2011)................................................................. 6

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................. 11

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................... 13

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................... 18

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................... 12, 13

*Mikhlin v. Oasmia Pharmaceuticals AB*,
    19-CV-4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ....................................... 21

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ........................................................ 17

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    No. 11-CV-05801 DLI VVP, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) .......................... 7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................... 8

*Van Oss v. N.Y.*,
    No. 10 Civ. 7524 (SAS), 2012 WL 2550959 (S.D.N.Y. July 2, 2012)............................ 4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................... passim

*Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051 (CM) (GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ...................... 5

**Statutes**

15 U.S.C. § 78u-4(a)(4) ................................................................... 17

15 U.S.C. § 78u-4(a)(7) ................................................................... 20

**Rules**

Fed. R. Civ. P. 23 .................................................................. passim

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Saleh Doron Gahtan and Named Plaintiff Daniel Chiu ("Federal Court Plaintiffs"),[1] along with State Court Plaintiffs Adam Franchi, Raul Araujo, Lei Liang, and Mark Lee in the parallel State Court Action (Federal Court Plaintiffs and State Court Plaintiffs are collectively the "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement resolving all claims asserted in the Federal Court Action and the State Court Action (the "Actions"), for approval of the proposed Plan of Allocation of Settlement proceeds, and for certification of the Settlement Class for settlement purposes.

## I.   INTRODUCTION[2]

Subject to this Court's approval, Plaintiffs and Defendants have agreed to settle all claims in the Actions against Defendants in exchange for a cash payment of $9,500,000. This is a highly favorable result for the Settlement Class in light of the many risks inherent in this litigation against a China-based issuer.

The Settlement is the product of Plaintiffs' Counsel's thorough investigation concerning the claims asserted in the Actions and vigorous prosecution of the litigation on behalf of the Settlement Class. By the time the agreement to settle was reached, Plaintiffs' Counsel had a

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated April 1, 2021 (the "Stipulation"). *See* ECF No. 46.

[2] The Joint Declaration of Laurence Rosen and Michael Capeci in Support of Plaintiffs' Motions for (I) Final Approval of Class Action Settlement; and (II) Award of Attorneys' Fees, Expenses, and Award to Plaintiffs ("Joint Declaration" or "Joint Decl.") filed herewith, is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Actions; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation of the Net Settlement Fund. All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

thorough understanding of the strengths and potential weaknesses of the case, and had spent considerable time on behalf of Uxin ADS holders, including conducting a wide-ranging factual investigation, retaining private investigators and experts; drafting highly detailed pleadings, opposing Defendants' motion to dismiss in the State Court Action, opposing Defendants' pre-motion to dismiss in this Court; serving and responding to discovery in the State Court Action; moving for class certification in the State Court Action; and preparing for and participating in the mediation and settlement discussions overseen by a respected and experienced mediator, Mr. Robert A. Meyer, Esq., of JAMS, which included the exchange of detailed mediation statements. State Court Lead Counsel also briefed Defendants' appeal of the State Court's motion to dismiss order and filed a motion for class certification.

While Plaintiffs and Plaintiffs' Counsel believe that their claims are meritorious, they recognize the substantial challenges to proving liability, demonstrating a causal connection between the alleged misrepresentations and Plaintiffs' losses, proving class-wide damages, and achieving (and collecting upon) a greater recovery. Defendants have and will continue to contest each element of Plaintiffs' claims, and have  damages and negative causation defenses that may greatly reduce, or even eliminate, any potential recovery. Moreover, discovery would have been difficult and expensive given that the vast majority of the documents and witnesses are in China. Finally, even if Plaintiffs could have succeeded at trial, there is a significant risk that they would not be able to collect more than the amount left in Uxin's dwindling Directors & Officers (D&O) insurance coverage, as China does not recognize U.S. judgments.

The Settlement is eminently fair, adequate, and reasonable under the governing standards in this Circuit. The $9.5 million Settlement falls well within the range of settlements in comparable securities fraud cases and eliminates the significant costs and risks of continuing litigation through

trial and the inevitable appeals. Additionally, as of the date of this filing, no objections to any aspect of the Settlement or requests for exclusions from the Settlement have been received. Likewise, the proposed Plan of Allocation is eminently fair and reasonable, as it equitably allocates the Net Settlement Fund to those Settlement Class Members who submit valid claims.

For these reasons, and those set forth below, Plaintiffs respectfully submit that the Settlement and Plan of Allocation are in the best interests of the Settlement Class and merit final approval.

## II.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"). Furthermore, "[i]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (alterations in original); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (same).

### A.   The Settlement is Entitled to a Presumption of Fairness Because it is the Product of Arm's-Length Negotiations Among Experienced Counsel Before an Experienced Mediator

Courts may apply a presumption of fairness when a class settlement is the product of

"arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's recommendations regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), aff'd 822 F. App'x 40 (2d Cir. 2020);;*see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Van Oss v. N.Y.*, No. 10 Civ. 7524 (SAS), 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) ("a strong presumption of fairness attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations.").

Here, the Parties did not commence settlement negotiations until after the State Court issued a ruling on Defendants' motion to dismiss, and by that time, Defendants' motion to dismiss in the Federal Court Action was also fully briefed.  Nor did the Parties' all-day mediation on June 5, 2020 result in an agreement. It was only after many more months of negotiations following the mediation, with the continued involvement of Mr. Meyer, that the Parties ultimately reached an agreement in principle. *See* ¶¶39-46.

The extensive and arm's-length nature of the settlement negotiations between experienced counsel support the conclusion that the Settlement is presumptively fair, adequate, and reasonable. *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *4 (E.D.N.Y. Apr. 11, 2014) (citing *Wal-Mart*, 396 F.3d at 116). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in

evaluating the judgment of counsel." The involvement of a neutral mediator provides further support that negotiations were conducted at arm's-length. *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM) (GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified [JAMS mediator] strongly supports a finding that negotiations were conducted at arm's length and without collusion.").

Accordingly, these facts strongly weigh in favor of affording the Settlement the presumption of fairness and granting final approval.

### B. The Settlement is Substantively Fair, Reasonable and Adequate Under the Grinnell Factors

The Settlement is also substantively fair, adequate, and reasonable. It is well-established that "[i]n this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors," which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Deutsche Bank*, 236 F.3d at 86.

In applying the *Grinnell* factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Min. Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances." *IMAX*, 283 F.R.D. at 189. "[W]hen evaluating a

settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). As demonstrated below, the Settlement satisfies the criteria for approval under *Grinnell*.

### 1. Continued Litigation Would be Complex, Expensive, and Protracted

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Indeed, while securities class actions are inherently complex and expensive to litigate, this case is particularly so because of the unique challenges associated with litigating against China-based Defendants.

Further litigation would have required substantial additional expenditures of time and resources, involving complex issues of law and fact, with a significant risk of a lower recovery. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

For example, in the absence of the Settlement, the Federal Court Action would have

required resolution of the motion to dismiss, extensive fact and expert discovery, and Plaintiffs in both courts would litigate their class certification motions, summary judgment motions and *Daubert* motions, followed by proving their claims at trial, and prevailing on post-trial motions, and the inevitable appeals. Defendants had already appealed the State Court's partial denial of their motion to dismiss, and that remained unresolved. Throughout each litigation phase, Plaintiffs would continue to face a robust defense from Defendants' experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties"). As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner*, 2006 WL 903236, at *8.

Discovery would be particularly complex here given that Uxin is a China-based company whose business operations are in China, and the director and officer defendants are Chinese nationals residing in China. As such, there is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly and significantly delay any potential recovery to Settlement Class Members. Litigation with foreign defendants and witnesses adds complications, requiring Plaintiffs to follow appropriate international conventions to retrieve documents and receive testimony. This would also require extensive translation or the retention of bilingual attorneys to facilitate document review. ¶38; *See Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) ("Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient").

Even if Plaintiffs could recover an equally large judgment after a trial *and* recover from Defendants – both of which are far from certain given the risks discussed herein – the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, further reducing its value. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Significantly, because China does not recognize U.S. judgments, even if Plaintiffs win at trial, they may not be able to collect any amount that is higher than what would be left in Uxin's D&O policy.  There are real questions whether there would even be anything left in the D&O policy if the Actions proceed through trial. Accordingly, there is a very significant risk that further litigation might yield a smaller recovery – or no recovery at all – years in the future. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class). The Settlement eliminates the expense and delay of continued litigation, the depletion of limited accessible resources for settlement funds, and the risk that the Settlement Class could receive no recovery.

### 2.     The Lack of Objections or Opt-Outs Support Final Approval

The reaction of the class to a proposed settlement is a significant factor to weigh in

considering its fairness and adequacy. *See Bear Stearns*, 909 F. Supp. 2d at 266-67; *see Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Am. Bank Note*, 127 F. Supp. 2d at 425 (noting "the lack of objections may well evidence the fairness of the Settlement").

The absence of any objections and or requests for exclusion provides evidence of the Settlement Class members' overwhelming approval of the terms of the Settlement. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data, has caused 40,002 copies of the Notice to be mailed to potential members of the Settlement Class and nominees. *See* Declaration of Patty L. Nogalski Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Nogalski Decl."), Exhibit 1 to the Joint Decl., at ¶8. The Summary Notice was published electronically over *PR Newswire*. *Id.* at ¶9.

The Notice contains a description of the Actions, the Settlement, information about Settlement Class Members' rights, and instructions for filing a claim, objecting to any aspect of the Settlement, the Plan of Allocations, the motion for attorneys' fees, expenses, and Award to Plaintiffs; or to request exclusion from the Settlement Class. *See* Ex. A to Nogalski Decl.

While the deadline for Settlement Class Members to file objections or requests for exclusion – July 12, 2021 – has not yet passed, as of the date of this filing, no objections or requests for exclusions have been received. ¶73; Nogalski Decl. at ¶12.

The Settlement Class's favorable reaction supports approving the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484 (JFK),

2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that 34 requests for exclusion in response to the mailing of nearly 400,000 notices was a "minimal" number that "militates in favor of approving the settlement as be[ing] fair, adequate, and reasonable.").

### 3. Plaintiffs had Sufficient Information to Make Informed Decisions About Settling this Case

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' *[sic]* causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, the Parties "need not 'have engaged in extensive discovery' as long as 'they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed…however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

At the time of settlement, Plaintiffs and Plaintiffs' Counsel understood the strengths and weaknesses of the claims and defenses asserted, and could make informed appraisals regarding the chances of success. Plaintiffs' Counsel had conducted an extensive investigation of the claims asserted in the Actions, including analyzing public filings, news articles (including those in the Chinese media), analyst reports, and other publicly available information relevant to the claims at issue, and hiring private investigators to locate and interview relevant witnesses in China. Plaintiffs' Counsel also researched extensively the applicable law with respect to Plaintiffs' claims and potential defenses thereto in filing their complaints in the Actions, as well as responding to

10

Defendants' motions to dismiss and preparing for the mediation. Additionally, Plaintiffs' Counsel engaged experts to analyze damages for purposes of the mediation. ¶¶45-47.

The Parties attended a full-day mediation by Zoom on June 5, 2020, exchanging candid views about the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. However, a settlement was not reached at the all-day mediation, and the Parties continued their arm's-length negotiations with the assistance of Mr. Meyer, eventually reaching the global settlement of $9.5 million after six months of hard-fought and frank negotiations after the mediation. ¶¶40-44.

In light of these efforts, Plaintiffs and Plaintiffs' Counsel had a strong understanding of the claims and defenses asserted and the significant risks to establishing liability, damages, and collectability of a judgment in order to intelligently negotiate the Settlement. *See AOL Time Warner*, 2006 WL 903236, at *10; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms").

### 4.    Plaintiffs Faced Risks in Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495

F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

### a.    Risks of Establishing Liability

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11.   *See also Christina Asia Co., Ltd. v. Yun* Ma, No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019).   Defendants' motion to dismiss was pending in this Court at the time that the Parties agreed to the Settlement. Without a settlement, the Federal Court Plaintiffs face the risk that Defendants might prevail on their motion to dismiss. ¶53. Defendants have appealed the State Court's partial denial of their motion to dismiss. The Settlement avoids the risk that the First Department might rule in Defendants' favor or that Defendants may obtain leave to appeal to the New York State Court of Appeals. ¶54.

Even if the Federal Court Plaintiffs defeat Defendants' motion to dismiss and the State Court Plaintiffs overcome Defendants' appeal, Plaintiffs in both Actions face significant obstacles obtaining the necessary evidence to prove their case at summary judgment and trial, given that most of the relevant documents and witnesses are in China, where it is notorious difficult for foreign litigants to obtain discovery.  ¶¶55, 62.

#### b.      Risks of Establishing Damages

If the litigation had proceeded, Defendants would present negative causation and damages defenses, which may have found favor with the Court at summary judgment or the jury at trial. To recover damages, Plaintiffs' losses must be caused by the market's reaction to Defendants' misrepresentations, not by other business or macroeconomic factors. Here, Defendants have argued that negative causation would entirely foreclose any recovery of damages. ¶56.

As in other complex securities cases, the parties here would rely on expert testimony to assist the jury in determining damages. *Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). While Plaintiffs would argue that the stock price declines were directly attributable to the alleged misstatements and omissions regarding Uxin's shift in business strategy and the financial and operational data presented by the Company, and would present expert testimony in support of their position, Defendants would proffer their own expert to offer contrary testimony with respect to all of the price declines. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579–80 (S.D.N.Y. 2008).

Therefore, even if liability was established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Del Global*, 186 F. Supp. 2d at 365. If a jury accepted Defendants' arguments, damages in this case could be greatly reduced, if not entirely eliminated. *Marsh & McLennan*, 2009 WL 5178546, at *6 ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial,

13

it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

### 5. Risks of Maintaining Class Action Status Through Trial

Although class certification was not briefed in the Federal Court Action, such motions bear risk and uncertainty and are expenses as they require expert testimony. Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. If a class were to be certified, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage.").

The State Court Plaintiffs face similar risks. State Court Plaintiffs filed their motion for class certification on November 10, 2020. While the Settlement obviated the need for Defendants to file their opposition, Defendants have informed the State Court Plaintiffs that they intend to argue that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,* 137 S. Ct. 1773 (2017) precluded the State Court from certifying a nation-wide class. *Id.* While State Court Plaintiffs vigorously disagree with Defendants' argument, there is no guarantee how the State Court (and any appellate court which addressed the issue) would rule.

Accordingly, "the uncertainty surrounding class certification supports approval of the Settlement," *Marsh & McLennan*, 2009 WL 5178546, at *6, because "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *12.

### 6.    The Ability of Defendants to Withstand Greater Judgment

Uxin is based in China, and its assets are primarily in China. The Individual Defendants are Chinese nationals. Judgments obtained in the United States are not enforceable in China.  Even if Plaintiffs obtained a judgment against Defendants, there is a substantial risk that Plaintiffs would be unable to collect any of the judgment. While Uxin's D&O insurance is financing the defense of the lawsuit and the Settlement, the amount of Uxin's available insurance would become substantially depleted if the Actions were to proceed, eliminating the single most certain source for Plaintiffs to obtain a monetary recovery.  Without a settlement, there exists the real possibility that Plaintiffs would spend years litigating the Actions to a verdict, and recover nothing because the D&O insurance policy was exhausted by defense costs.

### 7.    The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario – assuming Plaintiffs overcome all the obstacles noted

above to establish liability and damages – Plaintiffs' **maximum** damages are $206 million and does not reflect the potential success of Defendants' negative causation arguments.  They have argued, among other things, that when the announcement was made of the decision to stop providing inspection services to the 2B business, Uxin's ADS price did not decline.  Likewise, Defendants have argued that many of the facts underlying Plaintiffs' allegations of misrepresentation and/or omission were already in the public market and reflected in the ADS price at the time the J Capital Report was released .  Should any of these defenses be successful, recoverable damages would have been severely decreased, if not altogether eliminated.  *See Facebook,* 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.")  The Settlement, in the amount of $9.5 million, represents 4.6% of  maximum recoverable damages, which falls within the range of settlements recently approved in  securities class actions. *See* Cornerstone Research, *Securities Class Action Settlements 2020 Review and Analysis (2021)* at 6, Fig. 5;[3] *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses).

In a factually and legally complex securities class action lawsuit such as this, responsible counsel cannot be certain that they will be able to obtain – and particularly here, enforce – a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir.

---

[3] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (last viewed on June 25, 2021).

1992). Courts recognize that "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Money in Settlement Class Members' pockets now is more valuable than a larger, speculative recovery that Settlement Class Members might obtain after years of litigation. Thus, the Settlement Amount is within the range of reasonableness, and favors approval of the Settlement.

For the foregoing reasons, Plaintiffs submit that the proposed Settlement is both procedurally and substantively fair, reasonable and adequate, and in the Settlement Class's best interests.  Therefore, Plaintiffs respectfully request that the Court grant final approval and enter the proposed Judgment.

### C.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### 1.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the memorandum of law in support of the motion for an award of attorneys' fees, expenses, and award to Plaintiffs, filed concurrently herewith, Plaintiffs' Counsel seek an award of attorneys' fees of one-third of the Settlement and payment for litigation charges and expenses. These requests, fully disclosed in the Notice, are in line with other settlements approved in the Second Circuit.

In addition, Plaintiffs' Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order."). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

Plaintiffs also request $2,000 each (or $12,000 in total) pursuant to 15 U.S.C. § 78u-4(a)(4)

in connection with their efforts in stewarding the Actions.

**2.      The Parties Have No Other Agreements Aside from Opt-Outs and Disclosed Fee Arrangements**

Pursuant to Rule 23(e)(2)(C)(iv), as disclosed in the Stipulation (¶10.3), and in Plaintiffs' Preliminary Approval brief (ECF No. 48 at 14), the Parties have entered into a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Uxin ADSs represented by such opt outs equals or exceeds a certain amount, Defendants have the option to terminate the Settlement. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms were confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

**D.      The Plan of Allocation Should Be Approved**

In addition to seeking approval of the Settlement, Plaintiffs request that the Court approve the proposed Plan of Allocation of Settlement proceeds. The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "'it must be fair and adequate'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia*, 2019 WL 5257534, at 15‑16. In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225

F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan of Allocation ("Plan") is set forth in the Notice. *See* Nogalski Decl. at Ex. A, pp. 5-7. Plaintiffs' Counsel developed the Plan with the objective of equitably distributing the Net Settlement Fund. Each eligible Settlement Class Member who or which submits a valid Proof of Claim form, including Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan. Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution. Under the Plan, a "Recognized Loss" will be calculated for each purchase of Uxin ADSs during the Settlement Class Period for which adequate documentation is provided. The calculation of Recognized Loss is explained in detail in the Notice and incorporates several factors, including when and for what price the Uxin ADSs were purchased and sold, and the estimated artificial inflation in the Uxin ADSs respective prices at the time of purchase and sale. *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages). The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

Plaintiffs' Counsel believe that the proposed Plan provides a fair and reasonable method to allocate the Net Settlement Fund equitably among Settlement Class Members who suffered losses as result Defendants' alleged misconduct. Their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at

430. As of the date of this filing, no objections to the Plan have been received, suggesting that the Settlement Class also finds the Plan to be fair and reasonable. ¶73; *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan).

For each of the forgoing reasons, Plaintiffs respectfully submit that the proposed Plan is fair and reasonable, and merits final approval from the Court.

### E. Notice to the Settlement Class Satisfied all the Requirements of Rule 23 and Due Process

"The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Pierson*, 607 F. App'x at 73. The Notice satisfied Fed. R. Civ. P. 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Pierson*, 607 F. App'x at 73-74. The Notice also satisfies both Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and Fed. R. Civ. P. 23(e)(2)(C)(ii).

Both the substance of the Notice and the method of dissemination to potential members of the Settlement Class satisfies these standards. The Notice program was carried out by A.B. Data, a nationally-recognized claims administrator with extensive experience administering complex class action settlements. The Notice contains the information required by Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Actions and claims asserted; (ii) the definition of the Settlement Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given;

(iv) the Plan; (v) the Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Settlement Class Members' right to request exclusion from the Settlement Class and to object to the Settlement, the Plan of or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members. The Notice also provides: instructions for submitting a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund and relevant deadlines; and the contact information for Plaintiffs' Counsel as well as A.B. Data.  Ex. A. to Nogalski Decl.

A.B. Data has mailed a total of 40,002 copies of the Notice. Nogalski Decl. ¶8. A.B. Data also caused the Summary Notice to be published electronically over PR Newswire on May 24, 2021. *Id.* at ¶9. A.B. Data also established a settlement-specific website to provide members of the Settlement Class with information concerning the Settlement, all applicable deadlines, and copies of key documents including the operative complaints in the Actions, the Preliminary Approval Order, the Claim Form and the Stipulation. *Id.* at ¶11. The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan will govern how A.B. Data will calculate Settlement Class Members' claims and, ultimately, how the Net Settlement Fund will be distributed.

The mailing of the Notice to all members of the Settlement Class who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see e.g., Mikhlin v. Oasmia Pharmaceuticals AB,* 19-CV-4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) (approving substantially similar notice plan).

### F.   Final Certification of the Settlement Class

The Court's Preliminary Approval Order certified the Settlement Class for settlement

purposes only under Fed. R. Civ. P. 23(a) and (b)(3). (ECF No. 51 at ¶3). Nothing has changed to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval brief (ECF No. 48), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## III.   THE COURT HAS JURISDICTION TO APPROVE THE GLOBAL SETTLEMENT

As explained in Plaintiffs' Preliminary Approval brief (ECF No. 48, at 25), this Court may approve this global Settlement, which also settles the State Court Action, because the State Court Action alleges the same violations of the *federal* securities laws – specifically Sections 11, 12(a)(2), and 15 of the Securities Act – on behalf of the same class of Uxin shareholders against the same Defendants as the Federal Court Action. In other words, the claims in the State Court Action and the class on behalf of which they are brought overlap with the Federal Court Action. Accordingly, the Parties do not dispute that this Court has jurisdiction to approve the global settlement, which also settles the State Court Action.

## IV.   CONCLUSION

For all the forgoing reasons, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement and the proposed Plan of Allocation, and find that each is fair, reasonable and adequate, and in the best interests of the Settlement Class.

Dated: June 28, 2021                              Respectfully submitted,

*/s/ Laurence M. Rosen*
Laurence M. Rosen
(lrosen@rosenlegal.com)
Phillip Kim
(pkim@rosenlegal.com)
Yu Shi
(yshi@rosenlegal.com)

22

THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060

*Lead Counsel for Plaintiffs Saleh Doron
Gahtan, Daniel Chiu and the Proposed
Class in the Federal Court Action*

Brian Schall
(brian@schallfirm.com)
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964

*Additional Counsel to Plaintiffs Saleh
Doron Gahtan, Daniel Chiu and the
Proposed Class in the Federal Action*

-and-

Samuel Rudman
(srudman@rgrdlaw.com)
Michael G. Capeci
(mcapeci@rgrdlaw.com)
Magdalene Economou
(meconomou@rgrdlaw.com)
ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Tel.: (631) 367-7100

*Counsel for the Proposed Class in the State
Court Action*

Casey Sadler
(csadler@glancylaw.com)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Tel: (310) 201-9150

Daniella Quitt
(dquitt@glancylaw.com)

23

GLANCY PRONGAY & MURRAY LLP
712 Fifth Avenue, 31 floor
New York, NY  10019
Tel: (212) 935-7400

*Counsel for Plaintiff Mark Lee and the
Proposed Class in the State Court Action*

Mark Rifkin
(rifkin@whafh.com)
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY  10016
Tel: (212) 545-4600
Fax: (212) 686-0114

*Counsel for Plaintiff Lei Liang and the
Proposed Class in the State Court Action*

Frank R. Schirripa
(fschirripa@hrsclaw.com)
Kurt Hunciker
(khunciker@hrsclaw.com)
Seth M. Pavsner
(spavsner@hrsclaw.com)
HACH ROSE SCHIRRIPA
    & CHEVERIE LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 779-0028

*Counsel for Plaintiff Adam Franchi and the
Proposed Class in the State Court Action*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 28, 2021, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Laurence Rosen*
Laurence Rosen
