**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK MACHNIEWICZ, Individually and on behalf of all others similarly situated, | Case No: 1:19-cv-0822-MKB-VMS |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| UXIN LIMITED, KUN DAI, ZHEN ZENG, RONG LU, JULIAN CHENG, DOU SHEN, HAINAN TAN, MORGAN STANLEY & CO. INTERNATIONAL PLC, GOLDMAN SACHS (ASIA) L.L.C., J.P. MORGAN SECURITIES LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, and CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARD TO <u>PLAINTIFFS</u>**

## **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    FACTUAL AND PROCEDURAL HISTORY ......................................... 2

III.    ARGUMENT ............................................................................................. 3

      A.     The Common Fund Doctrine Applies to the Settlement.......................... 3

      B.     The Court Should Award a Reasonable Percentage of the Common Fund........... 4

      C.     The Requested Attorneys' Fees Are Reasonable ...................................... 6

            1.     The Requested Attorneys' Fees Are Reasonable under the Percentage-of-the-Fund Method ................................................................. 6

            2.     The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee ..................................................... 7

      D.     Factors Considered by Courts in the Second Circuit to Confirm the Fairness and Reasonableness of the Requested Fee ..................................... 9

            1.     Time and Labor Expended Support the Requested Fee ........................... 10

            2.     The Risks of Litigation Support the Requested Fee ................................ 11

            3.     The Magnitude and Complexity of the Actions Support the Requested Fee ................................................................................................. 14

            4.     The Quality of Plaintiffs' Counsel's Representation Supports the Requested Fee ..................................................................................... 15

            5.     The Requested Fee in Relation to the Settlement ................................... 17

            6.     Public Policy Considerations Support the Requested Fee ....................... 17

            7.     The Reaction of the Settlement Class Supports the Requested Fee.......... 18

      E.     Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained .................................................... 19

      F.     The Proposed Award to Plaintiffs is Reasonable..................................... 20

IV.    CONCLUSION....................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Aponte v. Comprehensive Health Mgmt., Inc.*,
No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ...................................... 11

*Becher v. Long Island Lighting Co.*,
64 F. Supp. 2d 174 (E.D.N.Y. 1999) ..................................................................................... 7

*Blum v. Stenson*,
465 U.S. 886 (1984) ............................................................................................................. 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................................. 3

*Christine Asia Co., Ltd. v. Yun Ma*,
No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................... 14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ................................................................................................. 11

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................. 6, 15, 18

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................................. 6

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir.) ........................................................................................................ 3, 5

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................................................ passim

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................... 3, 6, 18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 CIV.5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .......................................... 16

*In re AOL Time Warner, Inc.*,
No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................ 12, 14

*In re AT & T Corp.*,
455 F.3d 160 (3d Cir. 2006) ................................................................................................. 9

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    772 F.3d 125 (2d Cir. 2014) ............................................................................ 20, 21

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005) ...................................................................... 6

*In re China Sunergy Sec. Litig.*,
    No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 18

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................................ 9

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) (RER) 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............. 8, 9, 12

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................... 5, 8, 15

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
    2015 WL 6971424 ............................................................................... 6, 10, 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................ passim

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .......... 5, 19, 20, 21

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 8, 11, 15, 19

*In re KeySpan Corp. Sec. Litig.*,
    No. 01 CV 5852(ARR), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ................................. 19

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................. 21

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 13

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................... 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................. 5, 7

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ................................................................................ 6

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
  238 F. Supp. 2d 480 (E.D.N.Y. 2002) ................................................................ 19

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ...................................................................... 8

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................. 3, 15, 16, 21

*Johnson v. Brennan*,
  No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............................... 5, 6

*Khait v. Whirlpool Corp.*,
  No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................... 7

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................. 4, 9, 17

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ............................................................................... 4

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................................ 4

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) ....................................... 8

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ...................................................................... 19

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ...................................................................... 9

*Savoie v. Merchs. Banks*,
  166 F.3d 456 (2d Cir. 1999) ........................................................................... 7, 8

*State of W. Va. v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) .................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................ 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................ 4, 5, 6, 7

## **Statutes**

15 U.S.C. §77z-1(a)(4) ..................................................................................... 2, 20

15 U.S.C. § 78u-4(a)(4) ................................................................................................ 20

15 U.S.C. § 78u-4(a)(6) .................................................................................................. 5

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................................ 1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs' Counsel,[1] respectfully submit this memorandum of law in support of their request for an award of attorneys' fees and expenses, and award to Plaintiffs.

## I.    PRELIMINARY STATEMENT

The proposed Settlement, which provides for a cash payment of $9,500,000 in exchange for resolution of the Actions, represents a very good outcome for the Settlement Class. Since the inception of the Actions in 2019, Plaintiffs' Counsel have not received any compensation even as they risked time and money in this hard-fought and risky litigation. They now request that the Court award attorneys' fees equal to one-third (33⅓%) of the Settlement Amount (*i.e.* $3,166,666.67) for obtaining this favorable result for the Settlement Class.

Indeed, this litigation - against a Chinese issuer, Uxin - was fraught with risks. Not only did Plaintiffs' Counsel face numerous challenges to establishing liability and damages, Plaintiffs' Counsel took on this litigation fully cognizant that China does not recognize U.S. judgments; thus, there existed the real possibility that Plaintiffs' Counsel might receive nothing even if they litigate this case to trial and obtain a verdict.  Despite these risks, Plaintiffs' Counsel worked diligently on the Actions for more than two years, all on a contingency basis with no guarantee of ever being paid.

Plaintiffs' Counsel believe that an attorney fee award of one-third of the Settlement Amount, plus interest, properly reflects the significant risks taken by them, as well as the favorable result achieved. As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.  *See Goldberger v. Integrated Res.,*

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement (the "Stipulation") filed with the Court on April 2, 2021. *See* ECF No. 46.

1

*Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). When examined under either the percentage of the fund or lodestar methods for calculating attorneys' fees, the requested fee is eminently reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  To date, not a single Settlement Class Member has objected to any aspect of the Fee and Expense requests.

Plaintiffs' Counsel also seek payment for their litigation expenses, charges and costs of $79,031.39, which are reasonable in amount and were and necessary to successfully prosecute and resolve the claims against Defendants.

Finally, for over two years Plaintiffs have spent their time leading the Actions on behalf of the Settlement Class. Plaintiffs each request a modest reimbursement in the amount of $2,000 (or $12,000 in total) pursuant to 15 U.S.C. §77z-1(a)(4) to compensate them for their time. This request is reasonable and in line with awards granted in similar matters.

## II.     FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Joint Declaration of Laurence Rosen and Michael Capeci in Support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement; and (II) an Award of Attorneys' Fees, Expenses, and Award to Plaintiffs ("Joint Decl.") is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Actions; the nature of the claims asserted; the litigation and negotiations leading to Settlement; the risks and uncertainties of continued litigation; and a description of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class.[2]

---

[2] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to, the Joint Decl.

## III.     ARGUMENT

### A.     The Common Fund Doctrine Applies to the Settlement

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[3]   The Second Circuit has confirmed that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger*, 209 F.3d at 47.   *See also Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir.), *cert. denied,* 140 S. Ct. 385, 205 L. Ed. 2d 218 (2019).

"The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost."  *Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Courts have also recognized that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*; *see also Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("'To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.'").

"For the common fund [doctrine] to apply, the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley*

---

[3] Unless otherwise noted, internal citations and quotations are omitted and emphasis is added.

*v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All these elements are present here: Plaintiffs' Counsel's efforts have conferred a substantial benefit ($9,500,000 in cash) on an ascertainable class, and a fee award from the common fund will operate equitably "to shift the costs of litigation" to the benefitting group – the Settlement Class Members. *Maley*, 186 F. Supp. 2d at 369. Accordingly, the Court should award attorneys' fees from the common fund.

### B.     The Court Should Award a Reasonable Percentage of the Common Fund

In the Second Circuit, courts "'may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The Supreme Court has, however, suggested that in common fund cases the attorneys' fee should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class[.]"). Similarly, "[t]he trend in this Circuit is toward the percentage method," rather than the lodestar method. *Wal-Mart*, 396 F.3d at 121.

"There are several reasons that courts prefer the percentage method," including that it: (i) "'directly aligns the interests of the class and its counsel' because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made[;]" (ii) is "closely aligned with market practices because it 'mimics the compensation system actually used by individual clients to compensate their attorneys[;]'" (iii) "'provides a powerful incentive for the efficient prosecution and early resolution of litigation[;]" (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method[;]" and (v) "preserves judicial resources

4

because it 'relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions.'" *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011). *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work….The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel.")[4] "In contrast, the 'lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Wal-Mart*, 396 F.3d at 121.

The percentage method also comports with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method.").

Use of the percentage method does not, however, render lodestar irrelevant. Rather, part of

---

[4] The Second Circuit recently affirmed these principles in rejecting an objection to the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cty.*, 925 F.3d at 63.  In *Fresno*, the Second Circuit confirmed the propriety of the percentage approach for awarding attorneys' fees in PSLRA cases. *Id.* at 72.

the reasonableness inquiry to ensure that a fee award would not result in a windfall is a comparison

of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-

check.'" *Wal-Mart*, 396 F.3d at 123. "[W]here [the lodestar method is] used as a mere cross-check,

the hours documented by counsel need not be exhaustively scrutinized by the district court."

*Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by

the court's familiarity with the case," *id*., or "[t]he district courts may rely on summaries submitted

by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396

F.3d 294, 306-07 (3d Cir. 2005).  *See also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d

172, 184 (W.D.N.Y. 2011) (same); *Johnson*, 2011 WL 4357376, at *14-15 ("While courts still use

the lodestar method as a 'cross check' when applying the percentage of the fund method, courts

are not required to scrutinize the fee records as rigorously.").

    In sum, the weight of authority suggests that the Court should use the percentage-of-

recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *In re

Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts

utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying

the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.  When considered under either method,

the requested fees are reasonable.

### C.     The Requested Attorneys' Fees Are Reasonable

#### 1.     The Requested Attorneys' Fees Are Reasonable under the Percentage-of-the-Fund Method

Plaintiffs' request of one-third for Plaintiffs' Counsel's fee is fair, reasonable, and wholly

consistent with the range of percentages courts in the Second Circuit have awarded in similar

common fund cases. *See, e.g.*, *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132

CM GWG, 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.*

*Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *12 (awarding one third of attorneys' fees of $26,500,000 settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding fees on a graduated schedule including 33.3% of the first $10 million of the settlement and 30% of the next $40 million); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one third fee of $7.8 million settlement, is "well within the range accepted by courts in this circuit"); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund).

The major benefit of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Plaintiffs' Counsel developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims prior to engaging in mediation. *See Wal-Mart,* 396 F.3d at 121 (one of the merits of the percentage method is that it "'provides a powerful incentive for the efficient prosecution and early resolution of litigation'"); *Savoie v. Merchs. Banks*, 166 F.3d 456, 460-61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

In sum, the request for a one-third attorneys' fee is reasonable, as it falls squarely within the range of fees awarded in the Second Circuit for comparable securities class actions.

## 2.   The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and

customary hourly rate[5], and totaling the amounts for all time-keepers.[6] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie*, 166 F.3d at 460); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").                                          Here,

Plaintiffs' Counsel (including attorneys, paralegals, and professional support staff) devoted a total of 2,563.85 hours to the prosecution of the Actions, resulting in a lodestar of $1,838,383.75. ¶83. Based on a one-third fee (equal to $3,166,666.67), Plaintiffs' Counsel's lodestar yields a modest multiplier of 1.72. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See e.g., In re EVCI Career Colleges Holding*

---

[5] In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience and status.  As detailed in their accompanying firm resumes, the lawyers and paraprofessionals at Plaintiffs' Counsel's firms are experienced securities practitioners with track records of success, and among the most prominent and well-regarded securities practitioners in the nation.  Therefore, the hourly rates are reasonable here.

[6] The Supreme Court and courts in this Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).

*Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) ("[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *In re AT & T Corp.*, 455 F.3d 160, 173 (3d Cir. 2006) (multiplier of 2.99 was reasonable in a case that lasted four months even when "discovery was virtually nonexistent"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 363–64, 373 (S.D.N.Y. 2002) (awarding 4.65 multiplier in a case that settled after one year, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding attorney's fees representing a multiplier of 5.2); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (awarding a multiplier of 5.5).

In sum, Plaintiffs' requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D.    Factors Considered by Courts in the Second Circuit to Confirm the Fairness and Reasonableness of the Requested Fee

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrate that the requested fee is reasonable.

## 1.   Time and Labor Expended Support the Requested Fee

The time and effort expended by Plaintiffs' Counsel in prosecuting the Actions and achieving the Settlement supports the requested fee. As set forth in greater detail in the Joint Declaration, Plaintiffs' Counsel work on this matter included, among other things: (a) conducting a thorough investigation, including retaining a private investigator to conduct interviews in China and consulting with experts; (b) researching and drafting detailed pleadings; (c) opposing Defendants' motions to stay in the State Court; (d) opposing Defendants' various motions to dismiss; (e) serving written discovery in the State Action; (f) filing and briefing a cross appeal to the State Court's ruling on Defendants' motion to dismiss; (g) responded to Defendants' discovery to the State Court Plaintiffs; (h) negotiating the scope of discovery and a confidentiality order in the State Court Action; (i) filing a motion for class certification in the State Court Action;  (j) preparing mediation briefs and thereafter engaging in a mediation process overseen by a highly experienced third-party mediator, Robert A. Meyer, Esq. of JAMS, which included exchanging detailed mediation submissions, participating in a full-day formal mediation session, and engaging in months of follow-up negotiations; (k) negotiating and drafting the Stipulation and related settlement documents; (l) preparing the Plan of Allocation; (m) drafting the preliminary approval motion papers; and (n) overseeing the implementation of the notice process.

The legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with claims submission, responding to Settlement Class Members' inquiries, and shepherding the claims process to conclusion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond

to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor

expended by counsel in this matter support a conclusion that a 33% fee award in this matter is

reasonable."), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *Aponte v. Comprehensive Health Mgmt., Inc.*,

No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).

The substantial time and effort devoted to this case by Plaintiffs' Counsel to obtain the $9.5

million Settlement confirms that the fee request is reasonable.

### 2.  The Risks of Litigation Support the Requested Fee

#### a.  The Contingent Nature of Plaintiffs' Counsel's Representation Supports the Requested Fee

The requested fee is also reasonable because Plaintiffs' Counsel obtained a highly

favorable result even though it faced substantial risks, heightened by the fact that they were

litigating against Chinese defendants against whom Plaintiffs might not be able to enforce a

judgment even if successful at trial because China does not recognize U.S. judgments. "[T]he risk

of success [is] perhaps the foremost factor to be considered" in determining a reasonable fee.

*Goldberger*, 209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his

success to charge, when successful, as little as he would charge a client who in advance had agreed

to pay for his services, regardless of success. Nor, particularly in complicated cases producing

large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v.

Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In applying this factor, "'litigation risk must be

measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events."

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting

*Goldberger*, 209 F.3d at 55).

This Court has recognized that "class actions confront even more substantial risks than

11

other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). Securities class actions in particular are "notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010); *see also In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Further, courts have described as "misplaced" attorneys' confidence that they can predict with any degree of certainty the outcome of litigation. *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). That court pointed to two instances in which it had disapproved of proposed settlements only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.* In many cases, including some of Plaintiffs' Counsel's cases, attorneys pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect. ¶85.

This case was no exception. From the outset, Plaintiffs' Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Plaintiffs' Counsel ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require. *Id.* With an average lag time of several years for a case like this to conclude, the financial burden on Plaintiffs' Counsel was greater than those for firms paid on an ongoing basis, as defense counsel were. *Id.*; *see Flag Telecom*, 2010 WL 4537550, at *27. Indeed, Plaintiffs' Counsel received no compensation from this case during the litigation and have incurred

$79,031.39 in out-of-pocket expenses in prosecuting this action for the benefit of the Settlement Class. ¶84.

Despite the many uncertainties regarding the outcome of the case, Plaintiffs' Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses. Plaintiffs' Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.      Risks of Establishing Liability

While Plaintiffs remain confident of their claims, their ability to prove their claims was far from certain.  As detailed in the Joint Declaration and in the Plaintiffs' mem, Defendants raised numerous challenges in their motions to dismiss Plaintiffs' complaints, including challenges to the falsity of the alleged misstatements and omissions, and loss causation. ¶¶52-60. Though the State Court Plaintiffs prevailed in part on Defendants' motion to dismiss, at the time this Settlement was reached the Parties had filed and briefed cross motions with respect to the State Court's order on the motion to dismiss. Regardless of how these motions were resolved, Defendants would press these arguments again at summary judgment.  Therefore, whether Plaintiffs would ultimately prove liability was far from assured.

13

### c.     Risk of Establishing Damages

Defendants would continue to attack the causal link between Defendants' alleged misstatements and Plaintiffs' losses, as well as the damages calculations of Plaintiffs' Counsel's consultant which, if accepted, would severely limit, or entirely eliminate, the amount of damages that could be recovered.  Defendants would never concede these points and would continue to press these defenses at summary judgment and trial.

### 3.     The Magnitude and Complexity of the Actions Support the Requested Fee

Courts recognize that securities class actions are "notorious[ly] complex[]." *AOL Time Warner*, 2006 WL 903236, at *8; *see also Christine Asia Co., Ltd. v. Yun Ma,* No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019)( "Securities class actions in particular are 'notably difficult and notoriously uncertain.'''). This litigation is more complex than the typical securities class action, given that Uxin is a Chinese company and its business operations are entirely in China. Just drafting the pleadings required Plaintiffs to hire Chinese investigators, scour the Chinese news media, and retain experts. Discovery would have been very complicated. For example, Plaintiffs would have had to research Chinese law in order to navigate roadblocks associated with taking evidence in (and out of) China. Plaintiffs would need to file letters rogatory to obtain evidence from China. Depositions would require travel to Hong Kong because China does not allow them to be conducted, and generally does not permit its citizens to be deposed via video-conference. Most of the documents and evidence in this case are likely to be in Chinese, requiring translation as well as bilingual attorneys to review and analyze them.

Had the Actions not settled, continued litigation would have included additional motion practice, summary judgment motions, and *Daubert* motions; extensive discovery, including the review of likely hundreds of thousands of pages of Chinese-language documents and depositions

of China-based fact and expert witnesses; a trial; post-trial motion practice; and, undoubtedly, appeals. This is likely to take years.

At many junctures, securities class action plaintiffs must prove complex concepts to recover on their claims. For example, to establish damages here, Plaintiffs must hire an expert to counter Defendants' "negative causation" argument (*i.e.* that Uxin's stock price dropped due to reasons other than the alleged misrepresentations). Moreover, to certify a class under Section 10(b), the Federal Court Plaintiffs would have to establish that the market for Uxin's ADSs was efficient. These are highly technical and complicated tasks.

Accordingly, the magnitude and complexity of the Actions supports the requested fee. *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4. The Quality of Plaintiffs' Counsel's Representation Supports the Requested Fee

The best evidence of the quality of representation Plaintiffs' Counsel provided is the recovery it achieved in light of obstacles presented. *See Veeco*, 2007 WL 4115808, at *7; *Global Crossing*, 225 F.R.D. at 467. Here, the Settlement provides a substantial recovery of $9.5 million, a highly favorable result for the Settlement Class in light of the serious risks of continued litigation against a China-based issuer with depleting D&O insurance policies. *See EVCI*, 2007 WL 2230177, at *17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery."). Plaintiffs' Counsel respectfully submits that the quality of their efforts in the Actions, together with their substantial experience in securities class actions and commitment to providing the Settlement Class with the best possible representation, provided leverage necessary to negotiate the Settlement. *See* Firm Resume of Lead Counsel, The Rosen Law Firm, previously submitted as ECF No. 7-4; Firm

15

Resumes of State Court Lead Counsel, previously submitted as ECF Nos. 49-2 to 49-5.  Indeed, Plaintiffs' Counsel have particular expertise litigating against Chinese issuers like Uxin; Lead Counsel's settlement that it achieved against Alibaba Group remains the largest-ever securities class action settlement against a Chinese company.[7]  Moreover, State Court Lead Counsel are among the most accomplished and experienced securities class action law firms in the country, with long track records of successful prosecution of complex class actions.  Plaintiffs' Counsel's experience and reputation helped the Settlement Class achieve this $9.5 million recovery.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting award of requested attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV.5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir. 2008) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by accomplished attorneys from Skadden Arps Slate Meagher & Flom LLP and Simpson Thacher & Bartlett LLP, two of the world's most prominent law firms with highly-skilled securities practitioners who vigorously represented the interests of their clients throughout the Actions.

Notwithstanding this formidable opposition, Plaintiffs' Counsel presented a strong case and demonstrated willingness to prosecute the Actions vigorously which enabled Plaintiffs' Counsel to achieve the favorable Settlement. Consequently, this factor further supports the

---

[7] *Christine Asia Co. Ltd. et al. v. Jack Yun Ma, et al.,* 1:15-md-02631-CM-SDA (S.D.N.Y.)

16

requested fee.

### 5.    The Requested Fee in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III(C) above, the requested one-third fee is well within the range of percentage fees that courts in the Second Circuit have awarded in comparable cases. Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9 ("Private actions to redress real

17

injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices[,] . . . [but] [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").

Indeed, the integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here. *See In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.'").

### 7. The Reaction of the Settlement Class Supports the Requested Fee

The overwhelmingly positive reaction of the Settlement Class also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). To date, the Claims Administrator has mailed 40,002 Notices to potential Settlement Class Members and nominees informing them, among other things, that Plaintiffs' Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund and up to $100,000 in litigation expenses and that Plaintiffs would seek awards and reimbursement from the Court up to $2,000 each. While the time to object does not expire until July 12, 2021, not a single objection has been received to date. ¶73. The lack of objections is "strong evidence" of the reasonableness of the fee request. *Ressler v.*

18

*Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).[8]

**E.    Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Plaintiffs' Counsel also seeks an award of $79,031.39 in litigation costs and expenses incurred in connection with the prosecution of the Actions. "Courts routinely grant the expense requests of class counsel." *Gilat*, 2007 WL 2743675, at *18 (quoting *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at *18 (E.D.N.Y. Sept. 30, 2005)); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *see also In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding payment of $100,000 in litigation expenses).

Plaintiffs' Counsel incurred $79,031.39 in charges, costs and expenses to prosecute this action, which is considerably less than the $100,000 amount described in the Notice. ¶84. The vast majority of the expenses were incurred for professional services rendered by Plaintiffs' experts, investigators, and Mr. Meyer's mediation services; the remaining expenses are attributable to the costs of, among other things, service of process, press releases to communicate with potential Settlement Class Members, copying and producing documents, legal and factual research, translation fees, and other incidental expenses incurred in the course of the litigation of the Actions. *Id.;* Exs. 2-7. These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, they should be awarded. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production

---

[8] Should any objections be received, Plaintiffs will address them in their reply papers.

and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (awarding "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

### F.    The Proposed Award to Plaintiffs is Reasonable

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §77z-1(a)(4);15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at *19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370.

Each Plaintiff dedicated a significant amount of time to the successful prosecution of the Actions by, among other things: monitoring news on Uxin, reviewing all pleadings and other key documents filed in the Actions, communicating and corresponding with Plaintiffs' Counsel, searching for and producing records of their transactions in Uxin ADSs, and discussing and evaluating the Settlement with Plaintiffs' Counsel. ¶¶88, 89.

These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Accordingly, Plaintiffs respectfully request that the Court grant their modest requests, in the amount of $2,000 each (or $12,000 total), as reimbursement for their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.*; *see also In re Bank of Am. Corp.* 772 F.3d at 132 (affirming award of approximately $453,000 to representative plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *Gilat,* 2007 WL 2743675, at *19 (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) award Plaintiffs' Counsel their reasonable attorneys' fees in the total amount of 33⅓% of the Settlement Amount (or $3,166,666.67), (b) award Plaintiffs' Counsel for their expenses and costs in the amount of $79,031.39 and (b) reimburse Plaintiffs for services rendered to the Settlement Class in the amount of $2,000 each, or $12,000 in total.

Dated: June 28, 2021                          Respectfully submitted,

*/s/ Laurence M. Rosen*
Laurence M. Rosen
(lrosen@rosenlegal.com)
Phillip Kim
(pkim@rosenlegal.com)
Yu Shi
(yshi@rosenlegal.com)
THE ROSEN LAW FIRM, P.A.

275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060

*Lead Counsel for Plaintiffs Saleh Doron
Gahtan, Daniel Chiu and the Proposed
Class in the Federal Court Action*

Brian Schall
(brian@schallfirm.com)
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964

*Additional Counsel to Plaintiffs Saleh
Doron Gahtan, Daniel Chiu and the
Proposed Class in the Federal Action*

-and-

Samuel Rudman
(srudman@rgrdlaw.com)
Michael G. Capeci
(mcapeci@rgrdlaw.com)
Magdalene Economou
(meconomou@rgrdlaw.com)
ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Tel.: (631) 367-7100

*Counsel for the Proposed Class in the State
Court Action*

Casey Sadler
(csadler@glancylaw.com)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Tel: (310) 201-9150

Daniella Quitt
(dquitt@glancylaw.com)
GLANCY PRONGAY & MURRAY LLP
712 Fifth Avenue, 31 floor
New York, NY  10019

Tel: (212) 935-7400

*Counsel for Plaintiff Mark Lee and the*
*Proposed Class in the State Court Action*

Mark Rifkin
(rifkin@whafh.com)
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114

*Counsel for Plaintiff Lei Liang and the*
*Proposed Class in the State Court Action*

Frank R. Schirripa
(fschirripa@hrsclaw.com)
Kurt Hunciker
(khunciker@hrsclaw.com)
Seth M. Pavsner
(spavsner@hrsclaw.com)
HACH ROSE SCHIRRIPA
    & CHEVERIE LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 779-0028

*Counsel for Plaintiff Adam Franchi and the*
*Proposed Class in the State Court Action*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2021, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>/s/ Laurence Rosen</u>
Laurence Rosen