**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK MACHNIEWICZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs<br><br>UXIN LIMITED, KUN DAI, ZHEN ZENG, RONG LU, JULIAN CHENG, DOU SHEN, HAINAN TAN, MORGAN STANLEY & CO. INTERNATIONAL PLC, GOLDMAN SACHS (ASIA) L.L.C., J.P. MORGAN SECURITIES LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, and CHINA RENAISSANCE SECURITIES (HONG KONG), LIMITED,<br>Defendants. | 19-cv-00822-MKB-VMS<br><br>Hon. Margo K. Brodie<br><br>Hon. Vera M. Scanlon |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

| | |
|---|---|
| IN RE UXIN LIMITED SECURITIES LITIGATION | Index No. 650427/2019<br><br>Hon. Andrew Borrok<br><br>Commercial Division Part 53 |

**JOINT DECLARATION OF LAURENCE ROSEN AND MICHAEL CAPECI IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, EXPENSES, AND <u>AWARD TO PLAINTIFFS</u>**

**TABLE OF EXHIBITS**

Exhibit 1:   Declaration of Patty L. Nogalski Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date

Exhibit 2:   Declaration of Laurence Rosen in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expense Filed on Behalf of The Rosen Law Firm, P.A.

Exhibit 3:   Declaration of Michael G. Capeci in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expense Filed on Behalf of Robbins Geller Rudman & Dowd LLP

Exhibit 4:   Declaration of Daniella Quitt in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expense Filed on Behalf of Glancy Prongay & Murray LLP

Exhibit 5:   Declaration of Mark C. Rifkin in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expense Filed on Behalf of Wolf Haldenstein Adler Freeman & Herz LLP

Exhibit 6:   Declaration of Frank R. Schirripa in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expense Filed on Behalf of Hach Rose Schirripa & Cheverie LLP

Exhibit 7:   Declaration of Michael I. Fistel, Jr. in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expense Filed on Behalf of Johnson & Fistel, LLP

Exhibit 8:   [Proposed] Order and Final Judgment

1

We, LAURENCE ROSEN and MICHAEL CAPECI, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      Laurence Rosen is the Managing Attorney at The Rosen Law Firm, P.A. ("RLF"), and I am duly admitted to practice law in New York State and before this Court. RLF is the Lead Counsel[1] in the Federal Court Action.  Michael Capeci is a member of Robbins Geller Rudman & Dowd LLP ("RGRD"), and I am duly admitted to practice law in New York State and before this Court. RGRD is one of the co-lead counsel in the State Court Action. We have personal knowledge of the matters set forth herein and, if called upon, we could and would competently testify hereto.

2.      We submit this Declaration in support of Plaintiffs' Motions for: (1) Final Approval of Class Action Settlement; and (2) Award of Attorneys' Fees, Expenses, and Award to Plaintiffs, both filed concurrently herewith.

3.      The purpose of this Declaration is to set forth the nature of the investigation, litigation, and negotiations that led to the Settlement, and demonstrate why the Settlement and proposed Plan of Allocation of the Net Settlement Fund are  fair, reasonable, and adequate and should be approved by this Court, and why Plaintiffs' Counsel's requests for attorneys' fees and expenses, and award to Plaintiffs, are reasonable and should be approved by this Court.

4.      The Settlement provides for a cash payment by or on behalf of Defendants in the amount of $9,500,000 in exchange for full releases of Plaintiffs' claims, and completely resolves the Federal Court Action and the State Court Action (the "Actions").

5.      The Court preliminarily approved the Settlement on April 22, 2021 (the "Preliminary Approval Order") (ECF No. 51).

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation of Settlement, dated April 1, 2021 (ECF No. 46).

6.      Plaintiffs now seek final approval of the Settlement and proposed Plan of Allocation, as well as an award of attorneys' fees to Plaintiffs' Counsel of 33⅓% (one-third) of the Settlement Fund, payment of litigation charges and expenses of $79,031.39, as well as award to Plaintiffs of $2,000 each, or $12,000 total for the six Plaintiffs.

## OVERVIEW OF THE LITIGATION

### The Allegations

7.      Uxin represents itself as the largest used car e-commerce platform in China.  At the time of Uxin's June 27, 2018 initial public offering (the "IPO"), the Company had two primary business segments: (i) Uxin used cars (known as "2C"), which provides consumers with customized car recommendations, financing, title transfer, delivery, insurance, and other related services for used cars; and (ii) Uxin auction ("2B"), which facilitates online auctions for used cars. Within the 2B business, Uxin further distinguished between used car sales to businesses ("B2B") and consumers ("C2B").

8.      The State Court Plaintiffs allege two theories of liability under the Securities Act of 1933 (the "Securities Act") against Defendants:  (i)  that the Registration Statement for the IPO violated Item 303 of Regulation S-K by failing to disclose that Uxin would stop providing vehicle inspections – a much publicized feature of Uxin's services and one of its key competitive advantages – in its 2B business shortly after the IPO (the "Shift in Business Strategy" allegation"); and (ii) that numerous aspects of Uxin's financial and operational data reported by the Company were materially inaccurate, including, among other things, that Uxin's revenue and revenue growth, transaction volume and vehicle inventory were overstated, and materially understating Uxin's debt, including by not reporting up to $3.6 billion of debt held by the Company's wholly owned subsidiary, The Kai Feng Finance Lease (Hangzhou) Co., Ltd. (the "Inflated Metrics"

3

allegation).    The State Court Plaintiffs assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act.

9.    The Federal Court Plaintiffs allege three theories of liability against Defendants. In addition to also alleging the Shift in Business Strategy and Inflated Metrics allegations, the Federal Court Plaintiffs also allege that the Registration Statement misrepresented Uxin's business model; specifically, that Uxin did not just provide an online platform for used car transactions, but also held its own inventory of used cars for sale (the "Misrepresentation of Business Model" allegation). The Federal Court Plaintiffs assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act, as well as Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**Procedural History – State Court Action**

10.    The State Court Action was commenced by the filing of a putative class action complaint on January 22, 2019 by plaintiff Mark Lee,  alleging that Defendants violated  Sections 11 and 15 of the Securities Act on behalf of all persons who purchased or otherwise acquired Uxin American Depository Shares ("ADSs" or "shares") pursuant or traceable to the Registration Statement.

11.    Additional complaints were filed by State Court Plaintiffs Adam Franchi, Lei Liang, and Paul Araujo between January 25 and 31, 2019, and a joint Amended Complaint was filed by Lee, Franchi, Liang and Araujo on March 21, 2019.  NYSCEF No. 8.[2]  State Court Plaintiff Kyle Buckley then filed a complaint on April 30, 2019, alleging similar violations of the Securities Act as well as violations of Section 12(a)(2) thereof.

*Motion Practice, Appeals and Discovery in the State Court Action*

---

[2] All references to "NYSCEF" are to the e-filing docket for the State Court.

12.      From the start of the litigation, the State Court pushed the litigation forward and was actively involved in the litigation, conducting frequent conferences, in person-arguments, and, during the height of the COVID-19 pandemic, multiple telephonic conferences.

13.      On July 7, 2019, the State Court granted the parties' joint stipulation to consolidate the five pending state court cases and appointed Glancy Prongay & Murray LLP, Hach Rose Schirripa & Cheverie LLP, Robbins Geller Rudman & Dowd LLP, and Wolf Haldenstein Adler Freeman & Herz LLP as interim co-lead counsel (collectively, "State Court Lead Counsel"). NYSCEF No. 23.

14.      On July 15, 2019, the State Court denied defendants' motion to stay the State Court Action in favor of the later-filed Federal Court Action. *See Araujo v. Uxin Ltd.*, 2019 WL 3250017, at *1 (Sup. Ct. N.Y. Cty. July 15, 2019) (Borrok, J.).

15.      In accordance with the briefing schedule set by the State Court at the July 15 conference (NYSCEF Doc. # 27), defendants moved to stay discovery pending resolution of any motions to dismiss.  On July 26, 2019, State Court Plaintiffs filed their opposition to the motion. Defendants' reply papers were filed on July 31, 2019.

16.      At the same time, the State Court Plaintiffs were preparing a consolidated pleading. On August 5, 2019, a Consolidated Amended Complaint was filed that included the Shift in Business Strategy and Inflated Metrics allegations and alleged claims under Sections 11, 12(a)(2) and 15 of the Securities Act.

17.      On August 6, 2019, following oral argument on the motion to stay discovery, the State Court denied defendants' motion to stay discovery in the State Court Action because there was no pending motion to dismiss the Complaint.  NYSCEF No. 67.  At the conference, as certain defendants indicated that their motions to dismiss the Complaint were immediately forthcoming,

5

the State Court Plaintiffs, in the interest of judicial economy, agreed not to immediately seek discovery because of the State Court's decision in a concurrent action that the Private Securities Litigation Reform Act of 1995 (the "PSLRA") precludes such discovery in New York state court. *See In re EverQuote, Inc. Sec. Litig.*, 65 Misc. 3d 226, 240 (Sup. Ct. N.Y. 2019) (Borrok, J.).

18. Several weeks later, on September 10, 2019, defendants moved to dismiss the Amended Complaint. The State Court Plaintiffs opposed the motion on October 15, 2019. Defendants filed their reply on October 31, 2019.

19. On March 3, 2020, the State Court heard oral argument (in person) on the motions to dismiss.

20. By Decision and Order dated March 9, 2020, the State Court partially denied Defendants' motion to dismiss the State Court Action, dismissing the Shift in Business Strategy allegations and upholding the Inflated Metrics allegations. In its Decision and Order, the State Court ordered certain Defendants to answer the State Court Complaint by April 8, 2020, and set a preliminary conference for April 13, 2020. *Matter of Uxin Ltd. Sec. Litig.*, 2020 WL 1146636, at *11 (Sup. Ct. N.Y. Co. Mar. 9, 2020).

21. The State Court Plaintiffs served requests for production on March 13, 2020.

22. Also, within days of the Decision and Order, defendants filed a Notice of Appeal on March 12, 2020. NYSCEF No. 100. The State Court Plaintiffs cross-moved for appeal on May 4, 2020 (the first available date that they could do so because NYSCEF was offline starting on March 16, 2020 due to COVID-19). NYSCEF No. 102. By this time, COVID-19 altered the way the Court and the parties conducted business and a telephonic conference was held with the Court on April 28, 2020 to discuss the schedule for the State Court Action.

23.    On May 5, 2020, the parties agreed to explore mediation along with the Federal Court Plaintiffs, and stipulated to a schedule for defendants to respond to discovery as well as an extension of time for certain Defendants to file their answers.  NYSCEF No. 112.  The proposed schedule was so ordered by the Court that same day.

24.    In accordance with scheduling order in the State Court Action, certain Defendants filed their Answers on July 10, 2020. NYSCEF Nos. 116-17.

25.    As evidenced by the above, several tracks were ongoing during this time.  The perfecting of defendants' and the State Court Plaintiffs' respective appeal and cross-appeal briefs continued.  Defendants filed their Joint Appeal Brief and the record for the appeal on July 13, 2020; the State Court Plaintiffs filed their cross-appeal Joint Brief on August 12, 2020, certain Defendants filed their Reply Brief on August 21, 2020, and the State Court Plaintiffs filed their cross-appeal Reply Brief on August 31, 2020.

26.    On July 15, 2010, the State Court conducted a remote conference with the parties to address, *inter alia*, discovery, confidentiality, and class certification.

27.    On July 23, 2020, the parties submitted a proposed Confidentiality Order.  On July 27, 2020, the parties stipulated to a Case Management Order in the State Court Action which was so Ordered by the State Court on July 27, 2020, and fact discovery proceeded.  NYSCEF No. 119, as modified by NYSCEF No. 124.

28.    Among other things, the State Court Plaintiffs (i) served document requests; (ii) proposed discrete categories of centrally stored documents to certain Defendants for production; (iii) objected and responded to certain Defendants' document requests; and (iv) substantially completed their document production to defendants.  Thereafter, the parties reached a tentative agreement on the categories of centrally stored documents that certain Defendants would produce.

7

During the summer of 2020, the State Court Plaintiffs served numerous third-party subpoenas and met and conferred with these parties regarding their responses.

29. Thereafter, the parties conferred on discovery and had regular conferences with the Court. The State Court held a conference on October 7, 2020, at which it informed the Parties that it would not stay discovery pending the outcome of the appeal and cross-appeal. The State Court urged the parties to continue with discovery and mediation efforts and stated that the State Court would only allow a brief extension of the then-existing deadlines. The parties submitted a stipulation providing for an extension of the remaining items in the Case Management Scheduling Order, which the State Court so ordered on October 14, 2020. NYSCEF No. 124.

30. On November 10, 2020, the State Court Plaintiffs filed their motion for class certification. NYSCEF Nos. 126-136. Certain Defendants were to file their answering papers on December 24, 2020 (NYCEF No. 124), but because the Parties reached an agreement in principle to settle the claims in this litigation as described below, the parties in the State Court Action entered into a stipulation adjourning the briefing schedule and plaintiff depositions. NYSCEF No. 138.

**Procedural History – Federal Court Action**

31. The Federal Court Action was commenced on February 11, 2019, when plaintiff Patrick Machniewicz filed a putative class action complaint in this Court, asserting claims under the Securities Act against Defendants. ECF No. 1.

32. On April 12, 2019, pursuant to the PLSRA, Saleh Doron Gahtan timely moved to be appointed Lead Plaintiff. ECF No. 6. On August 14, 2019, the Court granted Gahtan's motion, and approved Gahtan's selection of The Rosen Law Firm, P.A. as Lead Counsel.

8

33.     On August 29, 2019, the parties in the Federal Court Action filed a stipulation setting a schedule for the filing of an amended complaint and Defendants' responses thereto. ECF No. 17. The Court approved the parties' proposed schedule on September 2, 2019.

34.     On October 25, 2019, following an extensive investigation which included hiring private investigators to interview former Uxin employees and relevant third-party witnesses in China, Gahtan and named plaintiff Daniel Chiu filed an amended complaint (the "Federal Court Complaint"). ECF No. 19. The Federal Court Complaint asserts claims under the Securities Act and Exchange Act against Defendants.

35.     On January 10, 2020, certain Defendants served their motion to dismiss the Federal Court Complaint, which was subsequently joined by other Defendants. The Federal Court Plaintiffs served their opposition papers on March 9, 2020. Defendants' reply papers were served on April 24, 2020.  Pursuant to the order of Magistrate Judge Scanlon, the complete set of motion papers were filed on ECF on April 24, 2020. ECF Nos. 24-27.

36.     By that time, the Federal Court Plaintiffs, State Court Plaintiffs, and Defendants had begun exploring the possibility of a global settlement. On May 5, 2020, the parties applied to the Court to stay the Federal Court Action pending the outcome of a mediation. ECF No. 35. The Court granted the application on May 6, 2020.

37.     On September 4, 2020, the parties requested the Court to lift the stay as the parties had been unable to reach a settlement at the mediation. ECF No. 36. The Court granted the parties' request to lift the stay on the same day.

38.     On December 10, 2020, the Court entered a second stay in response to the parties' representation that they had reached an agreement in principle that would resolve this litigation. ECF No. 41.

**MEDIATION AND NEGOTIATION OF THE SETTLEMENT**

39.     As discussed above, in the spring of 2020, following the State Court's decision on the motion to dismiss and telephone conferences with the State Court, the parties in the State Court Action agreed to explore a global resolution of the Actions.  It was agreed that the Federal Court Plaintiffs would participate in the mediation.  The parties in both cases then engaged the services of Robert A. Meyer, Esq. of JAMS, a nationally-recognized mediator experienced in complex shareholder litigation.

40.     In connection with the mediation, the Federal Court Plaintiffs and State Court Plaintiffs separately provided Mr. Meyer with confidential mediation statements setting forth their positions on the issues of liability, causation, and damages.

41.     On June 5, 2020, the parties attended via Zoom an all-day mediation with Mr. Meyer.  At the end of the mediation session, the parties had not reached a settlement, but they agreed to continue communications in an effort to reach a global resolution of the Actions.

42.     Discussions continued over the next six months.  There were discussions amongst Plaintiffs' Counsel, Defendants' Counsel, and the mediator throughout the summer of 2020.  At several times throughout this time, it seemed that the parties would not be able to reach a resolution and discussions broke down several times while the State Court parties pursued their respective appeals and complied with discovery deadlines.

43.     In September and October 2020, Plaintiffs attempted to renew settlement negotiations both with and without the assistance of the mediator.  By this time, the parties in the State Court Action were not only conducting discovery, but preparing for oral argument on the appeal, briefing State Court Plaintiffs' class certification motion and preparing for plaintiff

depositions. Meanwhile, discovery was stayed in the Federal Court Action pursuant to the PLSRA, which stays discovery during the pendency of any motion to dismiss.

44. Ultimately, after these lengthy negotiations, on December 10, 2020, the parties agreed to a settlement of $9.5 million, subject to the negotiation of a stipulation of settlement and Court approval.

45. At the time the agreement in principle was reached, State Court Lead Counsel had conducted an extensive investigation of the claims asserted in the State Court Action. Among other things, State Court Lead Counsel analyzed public filings, news articles, analyst reports, and other materials concerning Defendants and the claims alleged. State Court Lead Counsel also researched extensively the applicable law with respect to the State Court Plaintiffs' claims against Defendants and the potential defenses thereto in connection with not only the filing of the State Court complaint and amended complaint, but in responding to Defendants' motions to dismiss, subsequent appeal, review of defendants' answers, as well preparing for the mediation.

46. Similarly, the Federal Court Plaintiffs were also armed with sufficient information to evaluate the Settlement, as Lead Counsel had performed an extensive investigation in China, including retaining Chinese investigators to locate and interview witnesses in China, as well as obtaining and translating relevant Chinese regulatory filings and media reports, to draft the Federal Court Complaint. Moreover, the briefing on Defendants' motion to dismiss as well as the exchange of detailed mediation submissions further provided Federal Court Plaintiffs with the necessary insights into the strengths and weaknesses of their claims.

47. Based on this investigation and review, as well as consultation with damages experts, we concluded that the terms and conditions of this Settlement are fair, reasonable,

11

adequate, and are in the best interests of the Settlement Class and proceeded to document the Settlement.

48.     Plaintiffs then began documenting the Settlement. The State Court Plaintiffs prepared the initial draft of the stipulation of settlement, while the Federal Court Plaintiffs provided initial drafts of the requisite exhibits to the stipulation. Given the global settlement, and after conferring with the presiding judge in State Court, the parties agreed that the Settlement would be presented to this Court to conserve the resources of the courts and parties, notwithstanding the parties' differing views on this issue.

49.     Thereafter, the Federal Court and State Court Plaintiffs worked together over several months to finalize the Settlement documents and retain and work with the Claims Administrator to ensure that notices were timely disseminated, and the settlement website was launched.  We worked together to ensure that all briefing supporting the proposed settlement was timely prepared.  This involved multiple conferences both among Plaintiffs' Counsel as a group and with defendants' counsel over the course of several months to address the complexities raised by the global settlement, including an appropriate release of claims and the proposed plan of allocation.

50.     On April 2, 2021, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement. ECF Nos. 46-49.

### PRELIMINARY APPROVAL OF THE SETTLEMENT

51.     On April 22, 2021, the Court entered the Preliminary Approval Order, which, among other things, preliminarily approved the Settlement, certified the Settlement Class for settlement purposes, appointed Plaintiffs as Class Representatives, appointed Plaintiffs' Counsel

as Class Counsel, approved Class Counsel's selection of the claims administrator, and set the schedule for final approval of this Settlement. ECF No. 51.

## RISKS OF CONTINUED LITIGATION

52.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $9,500,000. As explained below, this case presents significant and unique risks such that Plaintiffs and the Settlement Class might recover substantially less than the Settlement Amount – or nothing at all – if the case proceeded through additional layers of litigation to a verdict.

**Risks of Proving Liability**

53.     At the time the Settlement was reached, Defendants' motion to dismiss the Federal Court Action was pending. Absent this Settlement, Federal Court Plaintiffs face the risk that the Federal Court Complaint may be dismissed. For example, the Shift in Business Strategy claim was already dismissed in the State Court Action, suggesting the real possibility that this allegation would also be dismissed in the Federal Court Action. As for the Inflated Metrics and Misrepresentation of Business Model allegations, while Federal Court Plaintiffs believe in the strength of their claims, they recognize that Defendants make colorable arguments against these two allegations in their motion to dismiss. Accordingly, there is substantial uncertainty whether the Federal Court Complaint would get past Defendants' motion to dismiss.

54.     Moreover, although the State Court upheld the Inflated Metrics allegation, Defendants have appealed the ruling, arguing, among other things, that the trial court failed to apply the correct standard. As of the date of the Settlement, Defendants' appeal was pending, leaving the risk of reversal.  Even if the First Department agreed with the State Court and affirmed the upholding of the Inflated Metrics allegation, Defendants could move for re-argument, or in the

13

alternative, leave to appeal to the New York State Court of Appeals.  Thus, Defendants' appeal posed substantial risk to Plaintiffs' claims.

55.     Even if the Federal Court Action survives Defendants' motion to dismiss, and Defendants' appeal of the State Court's ruling ultimately fails, Plaintiffs in both Actions face significant hurdles proving their claims. Uxin is a China-based company and the Individual Defendants are Chinese nationals residing in China. Most, if not all, of the evidence needed to prove Plaintiffs' claims are in China, where it is notoriously difficult to conduct discovery. Accordingly, there is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through summary judgment and trial or enforce a judgment if one was obtained.

**Risks of Proving Causation and Damages**

56.     Plaintiffs also face challenges establishing a causal connection between their allegations and their monetary loss. With respect to the Shift in Business Strategy claim, Defendants argued that when the announcement was made of the decision to stop providing inspection services to the 2B business, the price of Uxin shares did not drop. Similarly, with respect to  the Inflated Metrics and Misrepresentation of Business Model claims, Defendants have argued that the contents of both allegations were already out in the public domain, and thus already reflected in Uxin's share price before the J Capital Report cited by Plaintiffs brought attention to these allegations, causing Uxin's share price to drop.

57.     Indeed, proving damages in a securities case is always difficult and invariably requires expert testimony. Here, Defendants would surely put forth a well-credentialed expert in an effort to prove "negative causation" – *i.e.* that Uxin's share price dropped due to reasons other than the alleged misrepresentations.  This would lead to the proverbial "battle of the experts" –

again with no guarantees that Plaintiffs' expert(s) would prevail. Even if Defendants prevail only in part on their damages arguments, Plaintiffs' damages would be significantly reduced.

**Other Risks**

58.     In addition to the risks involved in establishing liability and damages, Plaintiffs and the Settlement Class also face other significant obstacles that could prevent a meaningful recovery.

59.     For example, Defendants have argued that the State Court Plaintiffs might not be able to certify a nationwide class following the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,* 137 S. Ct. 1773 (2017). While the State Court Plaintiffs dispute that *Bristol-Myers* precludes a nationwide certification, the risk that the New York State Supreme Court might agree with Defendants' interpretation could not be ignored.

60.     Even if Plaintiffs in both the Federal Court Action and the State Court Action win at trial, they face risks collecting on their judgment.  Uxin is a China-based company with its assets primarily in China. The Individual Defendants are Chinese nationals residing in China. Chinese courts do not recognize U.S. judgments.  As such, even if Plaintiffs continue litigating for years and are successful at trial, they may be left with a judgment that cannot be enforced.

## COMPLEXITY, EXPENSE AND LIKELY DURATION OF THE LITIGATION

61.     Without a Settlement, Plaintiffs face protracted and expensive litigation – with unique discovery challenges - that could drag the Actions on for years.

62.     In the Federal Court Action, Federal Court Plaintiffs would first need to defeat Defendants' motion to dismiss, which is by no means guaranteed. After that, discovery would commence. Here, most of the evidence are in China. Plaintiffs would need to overcome Defendants' inevitable arguments that certain documents are not available for production due to China's stringent "State Secrecy" laws. Even if Plaintiffs manage to obtain documents, the vast

15

majority of them are likely to be in Chinese, which would require Plaintiffs to translate them as well as hire bilingual staff attorneys to review them. Depositions of Chinese nationals would be difficult, as Plaintiffs would need to travel to Hong Kong to take the depositions (China does not allow depositions on the Mainland), or if such is not possible due to COVID travel restrictions, seek the Chinese government's permission to conduct video depositions of Chinese nationals in China. The Chinese government is unlikely to grant such a request. Third parties with relevant knowledge and/or documents are also likely to be located in China, and Plaintiffs would need letters rogatory to obtain evidence from relevant third parties. All this makes litigation especially protracted and expensive.

63.    The State Court Plaintiffs, assuming they ultimately prevail against Defendants' appeal of the motion to dismiss order, face the same challenges as Federal Court Plaintiffs in obtaining discovery.

64.    Following discovery, Defendants are likely to file motions for summary judgment. If Plaintiffs defeat summary judgment, then trial would be next. Moreover, the loser at trial would almost certainly appeal. This process could take years to play out.

65.    In both Actions, experts would be needed to opine on, at minimum, causation and damages, adding substantially to Plaintiffs' litigation costs.

66.    Indeed, securities class actions are inherently complex and expensive to litigate, and this one is even more so because of the China-based Defendants and the attendant challenges and risks.

## THE SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATION BETWEEN EXPERIENCED COUNSEL

67.    Plaintiffs' Counsel have extensive experience prosecuting securities class actions, and have successfully prosecuted securities class actions in courts throughout the country,

including in the Eastern District of New York. *See* Firms Resumes of Lead Counsel and State Court Lead Counsel, previously submitted as ECF Nos. 7-4 (Lead Counsel Firm Resume), and 49-2 to 49-5 (State Court Lead Counsel Resumes). The Settlement was achieved only after months of hard-fought, arm's-length negotiations between Plaintiffs' Counsel and Defendants' Counsel, with the assistance of the mediator, Mr. Meyer of JAMS.

68. Defendants were represented by capable counsel at Skadden Arps Slate Meagher & Flom LLP and Simpson Thacher & Bartlett LLP, two of the most prominent defense firms in the world with substantial experience defending securities class actions. These lawyers vigorously pressed their clients' defenses, and would continue to do so.

## PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER PROVIDING FOR DISSEMINATION OF NOTICE

69. The Court approved the form and substance of the notice to be provided to the Settlement Class, the manner in which it would be provided, and approved Plaintiffs' Counsel's selection of A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator. *See* ECF No. 51, ¶¶ 7-8.

70. Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel oversaw the Court's directives for A.B. Data to provide notice of the Settlement to Settlement Class Members, which included, among other things: (1) mailing the Notice and Proof of Claim to all Settlement Class Members who can be identified with reasonable effort, and (2) publishing the Summary Notice over a national newswire service.

71. As detailed in the Declaration of Patty L. Nogalski Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Nogalski Decl."; attached hereto as Exhibit 1), A.B. Data timely completed these notice procedures.

72.     The Notice contains, among other things, a description of the Actions; the definition of the Settlement Class; a summary of the terms of the Settlement and the proposed Plan of Allocation, and a description of Settlement Class Members' rights to participate in the Settlement, object to any aspect of the Settlement, or exclude themselves from the Settlement Class. The Notice also informs Settlement Class Members of Plaintiffs' Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33⅓% (one-third) of the Settlement Fund, for payment of litigation costs and expenses in an amount not to exceed $100,000, and award to Plaintiffs not to exceed $2,000 each. *See* Ex. A to Nogalski Decl.

73.     The Notice included the July 12, 2021 deadline for Settlement Class Members to file objections, or to request exclusion from the Settlement Class.  Although the deadline to do so has not yet passed, to date, no Settlement Class Members have sought exclusion from the Settlement Class. Nogalski Decl., ¶12. Nor has any Settlement Class Member objected to any aspect of the Settlement.

74.     To date, A.B. Data mailed 40,002 Notices. Nogalski Decl., ¶8.

75.     In accordance with the Preliminary Approval Order, A.B. Data caused the Summary Notice to be published on *PR Newswire* on May 24, 2021.  Nogalski Decl., ¶9.

76.     A.B. Data maintains a toll-free telephone number (877-777-9588) for Settlement Class Members to call and obtain information about the Settlement and/or request a copy of the Notice and Proof of Claim. Nogalski Decl., ¶10.

77.     A.B. Data also established a dedicated website for the Settlement ("Settlement Website"). Settlement Class Members can view and download copies Notice and Proof of Claim, view important deadlines, and important case documents such as the operative complaints, the

Stipulation of Settlement, and the Preliminary Approval Order.  Settlement Class Members can also file their claims online through the Settlement Website. Nogalski Decl., ¶11.

78.     In accordance with the Preliminary Approval Order, Plaintiffs' Counsel will file reply papers on August 31, 2021 that will address any objections and/or exclusion requests received subsequent to this filing.

## ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT

79.     Pursuant to the Preliminary Approval Order, the Notice informed Settlement Class Members that the deadline to file a claim is August 11, 2021.

80.     The Notice informs Settlement Class Members that the Net Settlement Fund will be distributed among Settlement Class Members according to the Plan of Allocation approved by the Court.

81.     Plaintiffs' Counsel developed the proposed Plan of Allocation. Plaintiffs' Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members based on the date on which they purchased or sold Uxin ADSs, and the price at which they purchased or sold Uxin ADSs.  This formula for determining Settlement Class Members' "Recognized Losses" is uniformly applied to all Settlement Class Members who submitted claims.

## THE FEE AND EXPENSES APPLICATION

82.     Plaintiffs' Counsel is, collectively, applying to the Court for an award of attorneys' fees equal to 33⅓% of the Settlement Fund, or $3,166,666,67, plus payment of charges and expenses incurred in connection with the prosecution of the Actions in the amount of $79,031.39. Plaintiffs also request a modest award of $2,000 per Plaintiff (or $12,000 in total) to compensate them for the time they spent leading the Actions on behalf of the Settlement Class.

19

**Plaintiffs' Counsel's Fee and Expenses Request is Justified**

83.     Plaintiffs' Counsel have worked diligently for more than two years to achieve the Settlement, expending 2,563.85 hours for an aggregate lodestar of $1,838,383.75.[3] *See* Exhibits 2-7 (Plaintiffs' Counsel's fees and expenses declarations). The lodestar multiplier for the requested fee is 1.72. The rates Plaintiffs' Counsel billed for their attorneys are comparable to peer defense-side law firms litigation matters of similar magnitude.

84.     Plaintiffs' Counsel spent a total of $79,031.39 in charges and expenses in connection with the prosecution of the Actions,[4] considerably less than the $100,000 amount described in the Notice. *Id.* The vast majority of the expenses were for investigators, experts, and the mediator – all of which were essential to the successful resolution of the Actions. Plaintiffs' Counsel received no compensation whatsoever during the two and a half years that they have been litigating the Actions.

85.     In many cases, including some of Plaintiffs' Counsel's, attorneys have actively litigated securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

86.     From the outset, Plaintiffs' Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, counsel ensured that sufficient resources were dedicated to the litigation and that funds were available to compensate staff and to cover the expenses the litigation would require.

---

[3] This includes 539.45 hours expended by counsel in the Federal Court Action, for a lodestar of $388,845.25; and 2,024.40 hours expended by counsel in the State Court Action, for a lodestar of $1,449,538.50.

[4] This includes $25,917.21 incurred by counsel in the Federal Court Action, and $53,114.18 incurred by counsel in the State Court Action.

With an average lag time of several years for a case like this to conclude, the financial burden on Plaintiffs' Counsel was greater than those for a firm paid on an ongoing basis.

87.     Plaintiffs' Counsel's work will not end with the filing of the instant Motions for the Court's approval of the Settlement. Plaintiffs' Counsel will spend more time and resources drafting and filing the replies in support of the Motions, preparing for and appearing at the Settlement Fairness Hearing scheduled for September 7, 2021, assisting Settlement Class Members with claims filing, overseeing the claims process and distribution of the Net Settlement Fund to Settlement Class Members, as well as responding to Settlement Class Members' inquiries.

**The Requested Award to Plaintiffs is Justified**

88.     For two and a half years, Plaintiffs – Mr. Gahtan and Mr. Chiu in the Federal Court Action; Mr. Franchi, Mr. Lee, Mr. Araujo and Mr. Liang in the State Court Action – have spent their time leading the Actions on behalf of the Settlement Class. They request a modest award of $2,000 each, or $12,000 in total, to compensate them for this time and as an incentive for representative plaintiffs to come forward in cases in the future.

89.     Plaintiffs have devoted a substantial amount of time to the Actions. Plaintiffs each spent time monitoring news on Uxin, reviewing the pleadings and other key litigation materials, communicating and corresponding with relevant Plaintiffs' Counsel, searching for and providing records of their transactions in Uxin ADSs to relevant Plaintiffs' Counsel, and evaluating the Settlement.

We declare under penalty of perjury that the foregoing is true and correct.

Executed June 28, 2021 in New York, NY          _/s/_Laurence Rosen_
                                                 Laurence Rosen


Executed June 28, 2021 in Melville, NY           _/s/_Michael Capeci_
                                                 Michael Capeci